UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------X

Rosalinda Baez,

                    Plaintiff,              09-CV-596 (CPS)(SMG)

     - against -                            MEMORANDUM
                                            OPINION
Jetblue Airways Corporation and            AND ORDER
Tiffany "Doe",

                    Defendants.

---------------------------------X
SIFTON, Senior Judge.

        Plaintiff Rosalinda Baez commenced this action against

defendants Jetblue Airways Corporation ("Jetblue" or "Defendant")

and Tiffany "Doe" on February 12, 2009.[1] Plaintiff's complaint

asserts federal and state claims for relief, which arise from an

incident in which defendant Tiffany "Doe" allegedly lied to

agents of the Transportation Security Administration ("TSA")

about a statement made by plaintiff regarding a bomb on a Jetblue

flight. Plaintiff makes four federal claims for relief under 42

U.S.C. § 1983: false arrest, malicious prosecution, malicious

abuse of process, denial of right to fair trial, and negligent

hiring, training, and supervision, in violation of the Fourth,

Fifth, and Fourteenth Amendments. Plaintiff additionally makes

the following claims for relief under New York State law: false

arrest, malicious prosecution, malicious abuse of process,

---

[1]A separate motion seeking dismissal of claims against Doe, on the
ground that Doe was never properly served, is currently pending. For the
reasons set forth herein, that motion is denied as moot.

intentional infliction of emotional distress, prima facie tort, negligence, unjust enrichment and defamation. Plaintiff seeks compensatory and punitive damages. Now before the court is a motion by defendant Jetblue to dismiss the complaint as against it pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the motion is granted.

## BACKGROUND

The following facts are drawn from plaintiff's complaint and are taken as true for the purposes of this motion.

Plaintiff Rosalinda Baez is a citizen of the state of Texas, residing in Dallas, Texas. Defendant Jetblue was and is a domestic corporation, licensed to do business in the State of New York, and having its principal place of business in Queens, New York. Defendant Tiffany Doe was a gate agent employed by Jetblue and assigned to work at JFK International Airport in Queens, New York.[2]

On April 15, 2008, at 6:23 a.m., plaintiff Baez arrived at JFK International Airport, located in Queens, New York. Complaint at ¶ 7 ("Compl."). Plaintiff checked in at the Jetblue counter and was issued a ticket to board Flight 1061, which was scheduled to depart for Austin, Texas at 8:05 a.m. *Id.* at ¶ 8. At the

---

[2]The record contains no information regarding Doe's citizenship or domicile.

check-in counter, a Jetblue representative informed plaintiff that her plane would be leaving from Gate 18, but did not mention that Gate 18 was located in a separate building which was located in a different part of the airport. *Id*. at ¶ 9. Thereafter, plaintiff proceeded through security and waited for her flight. *Id*. at ¶ 11. Approximately one hour later, when plaintiff had not heard her flight announced, she inquired and was told that Flight 1061 was departing from a different terminal, and that she had to take a bus to get to this terminal. *Id*. at ¶ 12.

When plaintiff arrived at the gate, there were no passengers waiting. *Id*. at ¶ 13. She approached Jetblue agent Tiffany "Doe", who was coming from the departure jetway. *Id*. Plaintiff told Doe that she had a boarding pass for Flight 1061, and asked to be permitted to board since the flight was still at the gate. *Id*. at ¶ 14. Doe stated to the plaintiff, "I just closed the flight and you ain't getting on it." *Id*. at ¶ 15. Plaintiff informed Doe that she had been at the airport since 6:30 a.m., and that she had not been informed that Gate 18 was in a different terminal. *Id*. at ¶ 16. Doe continued to refuse to allow plaintiff to board the plane. *Id*. at ¶ 18.

Plaintiff asked Doe what would happen to her luggage if she boarded a different flight. *Id*. at ¶ 19. Doe informed plaintiff that her bag would be in Austin when she got there. *Id*. at ¶ 20. Plaintiff responded, "That doesn't make any sense. Isn't it a

security risk to let a bag go on a plane without a passenger, what if there was a bomb in the bag?" *Id*. at ¶ 21. Doe responded that TSA agents would know if there was a bomb in the bag, to which plaintiff responded, "TSA - my ass." *Id*. at ¶ 22. No further words were exchanged between plaintiff and Doe at that time. Flight 1061 remained on the ground at the gate for an additional 30 minutes prior to departure. *Id*. at ¶¶ 24, 25. During that time, Doe did not contact any TSA agents, nor did she take action to ensure that the plane was inspected for a bomb. *Id*. at ¶ 26.

After speaking with Doe, plaintiff went to the customer service area to re-book her flight. *Id*. at ¶ 27. While the booking agent was re-booking plaintiff, Doe walked over and stated, "this one thinks she's getting on a flight." *Id*. at ¶ 28. Doe further stated, "She['s] nasty. I['m] gonna mark her record." *Id*. at ¶ 29. Plaintiff commented that she was a frequent flier with Jeblue and asked why she was being treated in a rude manner; Doe did not respond. *Id*. at ¶ 30. Plaintiff was given a boarding pass for the next Austin flight, scheduled to depart from JFK at 1:05 p.m. *Id*. at ¶ 31. Doe was present when the new boarding pass was issued to plaintiff. *Id*.

Plaintiff returned to the main terminal and immediately logged on to her computer to file an online complaint with Jetblue, detailing the events set forth above. *Id*. at ¶ 32. In

this online entry, plaintiff identified Doe by her first name,
and objected to the rude and offensive manner in which Doe had
treated her. *Id*. at ¶ 33. As a result of plaintiff's complaint,
Jetblue officials spoke with Doe about the incident. *Id*. at ¶ 34.
The conversation took place while plaintiff was still waiting for
her flight to Austin. *Id*. at ¶ 35. Upon being asked about
plaintiff's complaint by Jetblue officials, Doe allegedly lied
about the words stated by plaintiff during their conversation,
claiming that plaintiff stated: "Well I have a bomb in my bag, so
are you guys going to turn the plane around 'cause I need my
bag?" *Id*. at ¶ 36-37. Doe also falsely claimed that plaintiff
further stated, "TSA does not know how to do their f-ing job,
because if it did, TSA would not catch [the bomb] and let it go
through." *Id*. at ¶ 38. Plaintiff alleges that she never made
these statements, and Doe knew that she never made these
statements. *Id*. at ¶ 39.

As a result of Doe's allegations, plaintiff was approached
by a Jetblue "security" agent, who directed her to accompany him
to the security office. *Id*. at ¶ 42. Plaintiff was detained by
TSA and interrogated for approximately five hours. *Id*. at ¶ 43.
Plaintiff was questioned about her patriotism, whether or not she
had suicidal thoughts, and her use of prescription drugs
(officers told her to "just admit what you are on.") *Id*. at ¶ 44.
Plaintiff was also repeatedly asked to admit that she made a bomb

threat, but she refused. *Id*. at ¶ 45. At the conclusion of this interrogation, plaintiff was arrested and charged with making a false bomb threat in violation of 49 U.S.C. § 46507. *Id*. at ¶ 46.

The story of plaintiff's arrest became a national and international news story, receiving coverage in South Africa, Denmark, Germany, and Sweden. *Id*. at ¶ 50. Plaintiff's personal and professional reputation was damaged as a result. *Id*. At the time of the incident, plaintiff was employed as a Senior Vice President for Schematics, a company that provides computer services for Dell Computer, and was earning an annual income of $190,000. *Id*. at ¶ 48. As a result of publicity stemming from her arrest, plaintiff was terminated from her job and has been permanently blackballed in her industry. *Id*. at ¶ 49. Prior to this incident, plaintiff had never before been arrested, and had never had dealings with the criminal justice system. *Id*. at ¶ 51.

On April 15, 2008, plaintiff was arraigned on a criminal complaint accusing her of making a false bomb threat, and released on a $200,000 bond. *See United States v. Rosalinda Baez*, E.D.N.Y. 08-CR-560. The bomb threat allegation was never adjudicated. Instead, on August 14, 2008, Baez was charged in a misdemeanor information with possession of a small quantity of marijuana. On September 2, 2008, Baez pled guilty to one count of possession of a controlled substance in violation of 21 U.S.C. § 844(a). The plea allocution did not discuss any of the facts that

form the basis for plaintiff's civil complaint, although the

Magistrate Judge did refer to the existence of the bomb threat

charge. On January 29, 2009, Magistrate Judge Mann sentenced Baez

to three years of probation and, pursuant to the plea agreement,

ordered her to pay restitution to Jetblue in the amount of

$13,448.20. In her Statement of Reasons for adopting the

Presentence Investigation Report, Magistrate Judge Mann stated

with respect to the bomb threat charge that the court "did not

make a finding as to the disputed facts and did not rely on them

in making its decision." Declaration of Jon Norinsberg, May 22,

2009, Ex. A.

## JURISDICTION

This Court has federal question jurisdiction over the

instant matter pursuant to 28 U.S.C. § 1331.[3]

---

[3]Plaintiff pleads in her complaint that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. However, she has failed to plead the complete diversity of the parties with sufficient particularity, as she has shown only that she is diverse from Jetblue, and not that she is also diverse from Doe. *See Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992) (complete diversity is required between all plaintiffs and defendants). It is a plaintiff's burden to demonstrate the existence of diversity jurisdiction on the face of the Complaint. *See John Birch Society v. National Broadcasting Co.*, 377 F.2d 194, 198 (2d Cir. 1967); *Baker v. Latham Sparrowbush Assocs.*, 808 F. Supp. 992, 1001 (S.D.N.Y. 1992).

The complaint states with respect to diversity jurisdiction that "the matter in controversy exceeds the sum specified by 28 U.S.C. § 1332." Compl. ¶ 4. The complaint further states that plaintiff is a citizen and resident of Texas, defendant Jetblue is a New York corporation with its principal place of business in New York, and Doe is a gate agent employed in Queens, New York. Nor further information is given about Doe's domicile. The pleading is therefore insufficient to establish diversity jurisdiction. *See Ganoe v. Lummis*, 662 F. Supp. 718, 723 (S.D.N.Y. 1987); *Anisfeld v. Cantor Fitzgerald & Co.*, 631 F. Supp. 1461, 1468 (S.D.N.Y. 1986) ("The complaint in this case is insufficient since it fails to affirmatively allege the states of citizenship

## DISCUSSION

### I. Motion to Dismiss Standard

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted), although "mere conclusions of law or unwarranted deductions" need not be accepted. *First Nationwide Bank v. Helt Funding Corp.*, 27 F.3d 763, 771 (2d Cir. 1994). Indeed, conclusory allegations "will not suffice to prevent a motion to dismiss." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). On a motion to dismiss, "[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995).

To survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility." *See Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1970; 550 U.S. 544; 167 L. Ed. 2d 929 (2007). Although the complaint need not provide "detailed factual allegations," *id*. at 1964; *see also ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n. 2 (2d Cir. 2007)

of each of the individual defendants.").

(applying the standard of plausibility outside *Twombly*'s anti-trust context), it must "amplify a claim with some factual allegations... to render the claim plausible." *Iqbal v. Hasty*, 490 F.3d 143, 157-158 (2d Cir. 2007) (emphasis in original) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after 9/11). The complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns*, 493 F.3d at 98 (quoting *Bell Atlantic*, 127 S.Ct. at 1965).

## III. Section 1983 Claims

Plaintiff alleges that defendants' false statements to law enforcement resulted in her false arrest, denied her right to fair trial, and constituted malicious prosecution and malicious abuse of process, all in violation of her rights under the Fourth and Fourteenth Amendments.

Section 1983 of 42 U.S.C. provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution

and laws, shall be liable to the party injured in an
action at law, suit in equity, or other proper
proceeding for redress.

42 U.S.C. § 1983. In order to allege a Section 1983 claim, a
plaintiff must (1) "allege the violation of a right secured by
the Constitution and laws of the United States" and (2) "show
that the alleged deprivation was committed by a person acting
under the color of state law." *West v. Atkins*, 487 U.S. 42, 48;
101 L. Ed. 2d 40; 108 S. Ct. 2250 (1988). In addition, "[w]here
damages are sought in a section 1983 action, the defendant must
be personally responsible for the alleged constitutional
deprivation: 'The general doctrine of *respondeat superior* does
not suffice and a showing of some personal responsibility of the
defendant is required.'" *Al-Jundi v. Estate of Rockefeller*, 885
F.2d 1060, 1065 (2d Cir. 1989) (quoting *Johnson v. Glick*, 481
F.2d 1028, 1034 (2d Cir. 1973)).

It is uncontested that plaintiff has alleged the deprivation
of rights protected under § 1983. However, defendant strenuously
argues that Jetblue did not act under color of state law. In
order to satisfy the state action requirement in cases where the
defendant is a private entity, the allegedly unconstitutional
conduct must be "fairly attributable" to the state. *Tancredi v.
Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003).
Plaintiff points to *Weintraub v. Board of Educ. of City of New
York*, 423 F.Supp.2d 38, 56 (E.D.N.Y. 2006), in which the court

held that "[i]f a victim makes false statements to the police,
with the intent to have an innocent person arrested in violation
of his *Fourth Amendment* rights, she may not only be held
accountable for false imprisonment under state tort law, but
under federal law, for invoking the state's power to
intentionally violate a citizen's constitutional rights." *Id*. at
58. In *Chodkowski v. City of New York*, 2007 U.S. Dist. LEXIS
67822 (S.D.N.Y. September 12, 2007), the court stated that merely
lying to police in order to have another arrested was
insufficient to establish state action; instead, some showing of
"bad faith" is required. *Id*. at *28-29. It is unclear why
intentionally causing the arrest of another out of malice does
not constitute bad faith. In any case, I need not resolve that
question here, because even assuming that plaintiff had properly
pleaded the first two elements, her claims must fail on the third
element of personal responsibility. Plaintiff's complaint nowhere
alleges that Jetblue directly caused harm to plaintiff except in
her claim, alleged under both federal and state law, that
defendant was negligent in its hiring, training, supervision, or
retention of employees who caused her constitutional harm. I
proceed to consider that claim.

"In instances where an employer cannot be held vicariously
liable for its employee's torts, the employer can still be held
liable under theories of negligent hiring, negligent retention,

and negligent supervision. [A] necessary element of such causes
of action is that the employer knew or should have known of the
employee's propensity for the conduct which caused the injury."
*Kenneth R. v. Roman Catholic Diocese*, 654 N.Y.S.2d 791, 793; 229
A.D.2d 159 (2d Dept. 1997) (citation omitted); *see also Adorno v.
Corr. Servs. Corp.*, 312 F. Supp. 2d 505, 518 (S.D.N.Y. 2004). A
plaintiff may also assert a negligent training claim, for which a
plaintiff "must demonstrate deficiencies in the training of
employees that, if corrected, could have avoided the alleged
harm." *Carter v. Port Auth. of N.Y. & N.J.*, 2004 U.S. Dist. LEXIS
25633, *16 (S.D.N.Y. December 20, 2004) (citing *Barr v. Albany
County*, N.Y.S.2d 665, 671; 50 N.Y.2d 247; 406 N.E.2d 481 (1980)).
"[T]he common thread running through each of these theories is
that the defendant must exhibit a mental state of 'deliberate
indifference' to a known injury, risk, or duty, and that the
failure to perform such duty or to ameliorate such risk
proximately caused the constitutional violation." *Phillips v.
City of New York*, 453 F. Supp. 2d 690, 726 (S.D.N.Y. 1996)
(citing *Doe v. New York City Dept. of Social Services*, 649 F.2d
134, 145 (2d Cir. 1981)).

Plaintiff has not alleged that Jetblue had knowledge that
Doe or any other employee had a propensity for making false
reports regarding passenger statements or for maliciously
retaliating against passengers who had made complaints against

them. Nor has plaintiff alleged facts regarding the training of Doe or other Jetblue employees. Because plaintiff cannot make out a claim for negligent hiring, supervision, retention, or training, and plaintiff lacks other grounds for holding Jetblue directly accountable for her alleged constitutional harms, plaintiff's § 1983 claims fail.[4]

---

[4]Another means of holding Jetblue liable in this case would be to allege that Jetblue had "(1) an official policy or custom that (2) [caused her] to be subjected to (3) a denial of a constitutional right." *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983); *see also Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 690-91, 694; 56 L. Ed. 2d 611; 98 S. Ct. 2018 (1978). This analysis, developed in the context of § 1983 claims against municipalities, provides a means by which to hold an entity responsible for the actions of employees that result in the deprivation of constitutional rights. However, plaintiff has made no such allegation.

To the extent that plaintiff proceeds on a theory that Jetblue itself was negligent in investigating the truth of Doe's comments before reporting plaintiff to TSA authorities (assuming in this context that Jetblue did not know that Doe's statements were false), her claim also must fail. "As a matter of public policy a negligence claim arising out of an investigation or prosecution will not be recognized under New York law." *Rivers*, 2009 U.S. Dist. LEXIS 26301, *29. Where "the negligence alleged is based upon an arrest, a plaintiff must resort to the traditional remedies of false imprisonment and malicious prosecution." *Pawlicki v. City of Ithaca*, 993 F.Supp. 140, 143 (N.D.N.Y. 1998); *see also Boose v. Rochester*, 421 N.Y.S.2d 740, 744; 71 A.D.2d 59 (4th Dept. 1979) (plaintiff's right to be free of restraint or unjustified and unreasonable litigation is limited by the policy of encouraging proceedings against those who are apparently guilty of criminal conduct and letting finished litigation remain undisturbed and unchallenged).

A claim for negligent training in investigative procedures must also fail, as it "is akin to a claim for negligent investigation or prosecution, which is not actionable in New York." *Russ v. State Emples. Fed. Credit Union*, 298 A.D.2d 791, 793; 750 N.Y.S.2d 658 (3rd Dept. 2002). This principle is often stated in the context of police or agency action that results in a false arrest. *See Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) ("a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution."). However, this rule also holds in cases where private defendants report plaintiffs to the police after conducing shoddy investigations. *See Mitchell v. County of Nassau*, 2007 U.S. Dist. LEXIS 38711, *42-43 (E.D.N.Y. May 24, 2007); *Pandolfo v. U.A. Cable Systems*, 568 N.Y.S.2d 981, 982; 171 A.D.2d 1013 (4th Dept. 1991); *Coleman v. Corporate Loss Prevention Assocs.*, 724 N.Y.S.2d 321, 322; 282 A.D.2d 703 (2d Dept. 2001).

## IV. Disposition

Because I conclude that the federal § 1983 claims against Jetblue must be dismissed, and judicial economy, convenience, fairness, and comity weigh against retaining supplemental jurisdiction over the remaining state claims, *see Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7; 108 S. Ct. 614; 98 L. Ed. 2d 720 (1988); *see also Martinez v. Simonetti*, 202 F.3d 625, 636 (2d Cir. 2000) (directing dismissal of state law claims when no federal claims remain); 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over a claim if, *inter alia*, "the district court has dismissed all claims over which it has original jurisdiction"), the motion to dismiss is granted.[5] However, because it is not clear that diversity jurisdiction over Tiffany cannot be established, plaintiff is granted leave to amend to the extent that amendment would not be futile. The only claims which it would not be futile to replead are the common law claims for false arrest, intentional

---

[5]Defendant argues, as an alternative ground for dismissal, that plaintiff's claims are precluded as to Jetblue by Section 44941(a) of the Aviation and Transportation Security Act, which provides for immunity for air carriers who disclose suspicious behavior to law enforcement in cases where the carrier does not know that the information is false, Section 1305 of the Airline Deregulation Act of 1978, which precludes state claims that directly relate to the price, route, or service of an air carrier, and a broad set of Federal statues that Jetblue claims occupy the field of airline regulation. I note that "nothing in [these] statutes authorizes an air carrier to take any action, such as having a passenger arrested out of spite or maliciousness, where the arrest was not necessary to the provision of a service," such as safety. *Rombom v. United Air Lines*, 867 F. Supp. 214, 225 (S.D.N.Y. 2004). In the event that plaintiff files an Amended Complaint, I will take up these issues further.

infliction of emotional distress, and defamation. The analysis that leads to that conclusion is as follows.

**A. Futility Standard**

A proposed amendment is futile when it fails to state a claim upon which relief may be granted, *Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002), such that "it is beyond doubt that the plaintiff can prove no set of facts in support" of its amended claims. *Pangburn v. Culbertson*, 200 F.3d 65, 70-71 (2d Cir. 1999) (internal quotation marks omitted).

**B. Claims as to which Amendment is Futile**

**1. Malicious Prosecution**

"The essential elements of an action to recover damages for malicious prosecution are (1) the initiation of an action, (2) its termination favorably to the plaintiff, (3) lack of probable cause, and (4) malice." *Defilippo v. County of Nassau*, 183 A.D.2d 695, 696; 583 N.Y.S.2d 283 (2d Dept. 1992). "A termination is not favorable to the accused... if the charge is withdrawn or the prosecution [halted] pursuant to a compromise [plea agreement] with the accused." *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 196;

734 N.E.2d 750; 712 N.Y.S.2d 438 (2000).[6]

In this case, the termination of plaintiff's criminal case was not favorable, because the bomb threat charge was dropped pursuant to a plea agreement.[7] The Magistrate Judge's plea allocution made explicit reference to the bomb threat charge in connection with plaintiff's agreement to pay restitution to Jetblue.[8] Since restitution was only available for losses caused by the bomb threat offense, the agreement to pay restitution constituted an implicit failure by plaintiff to contest the facts underlying that charge.[9] Accordingly, amendment to plaintiff's

---

[6]In contrast, when a prosecutor chooses not to pursue a charge, such action "compels an inference of such an unwillingness or inability to do so as to imply a lack of reasonable grounds for the prosecution," resulting in a 'favorable termination' of the charges for the purposes of asserting a malicious prosecution claim. *See Loeb v. Teitelbaum*, 77 A.D.2d 92, 101-2; 432 N.Y.S.2d 487 (2d Dept. 1980).

[7]Plaintiff objects to consideration of her guilty plea as a matter outside the pleadings. *See Global Network Communs., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006). Plaintiff states that a court may not take judicial notice of proceedings in another case "for the truth of the matters asserted in the other litigation." *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger U.S.A., Inc.*, 146 F.3d 66, 70 (2d Cir. 1998); *see also Global Network Communs.*, 458 F.3d at 156. However,"[t]he transcript of the proceedings is properly considered on [a motion] to dismiss because the proceedings themselves are expressly referenced in the Amended Complaint... the [plaintiff has] actual notice of the transcript's contents (having personally participated in the proceedings transcribed), and the transcript is a public document integral to the case." *Coakley v. Jaffee*, 49 F.Supp.2d 615, 621 n.3 (S.D.N.Y. 1999)

[8]In the course of the allocation the Magistrate Judge noted that the factual basis for the restitution agreement was the bomb threat charge.

[9]Plaintiff cites *Cantolino v. Danner*, 96 N.Y.2d 391, 395; 754 N.E.2d 164; 729 N.Y.S.2d 405 (2d Dept. 2001) for the proposition that she need only establish that the termination of the charge against her was not inconsistent with her innocence. However, the *Cantolino* court goes on to state that there are certain exceptions to this rule, including when there is a 'compromise' or plea agreement. *Id*. Furthermore, in *Cantolino*, the court found that the termination was in favor of the accused because the judge made explicit findings as to the defendant's innocence when he dismissed the charges, which

malicious prosecution claim would be futile.

## 2. Malicious Abuse of Process

"In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process." *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994). The collateral element of the claim must occur after process is issued. *See Kalika v. Stern*, 911 F. Supp 594, 602 (E.D.N.Y. 1994) (citing *PSI Metals v. Firemen's Insurance Co. of Newark*, N.J., 839 F.2d 42, 43 (2d Cir. 1988)); *see also Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003). A "malicious motive" in bringing the prosecution, without more, does not give rise to a malicious abuse of process claim. *See Curiano v. Suozzi*, 63 N.Y.2d 113, 117; 469 N.E.2d 1324; 480 N.Y.S.2d 466 (1984) (distinguishing between improper motive and improper purpose).

Plaintiff alleges that Doe intentionally reported false

---

was not the case here. *Id*. Additionally, plaintiff cites *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991), and *Janetka v. Dabe*, 892 F.2d 187, 100 (2d Cir. 1989), for the proposition that a conviction on one criminal charge does not bar a malicious prosecution claim on other criminal charges. However, the passages cited refer to situations in which a plaintiff was *acquitted* of a charge and convicted of another charge, which is not the case here, as the Magistrate Judge made no findings as to plaintiff's innocence of the bomb threat charge.

information regarding a bomb threat in order to deflect attention from her own poor job performance when confronted by her supervisors regarding plaintiff's online complaint. "Thus, plaintiff does not allege that the process was improperly used after it was issued but only that defendants acted maliciously when they initialized the action." *Taylor v. City of New York*, 2006 U.S. Dist. LEXIS 41429, *16-17 (S.D.N.Y. June 21, 2006). Because the legal process itself was used for what it was intended for, to adjudicate criminal complaints, amendment with respect to this claim would be futile.

**3. Prima Facie Tort**

"The elements of a cause of action for prima facie tort under New York law are: (1) the intentional infliction of harm, (2) which results in special damages,[10] (3) without any excuse or justification, (4) by an act or series of acts which would otherwise be lawful. In addition, the complaint must allege that defendants were motivated solely by the malicious intention to injure the plaintiff."[11] *McKenzie v. Dow Jones & Co.*, 2008 U.S.

---

[10] "Special damages" is defined as a "specific and measurable loss," *Freihofer*, 65 N.Y.2d at 143, and "must be alleged with sufficient particularity to identify actual loses and be related causally to the alleged tortious acts." *McKenzie v. Dow Jones & Co.*, 2008 U.S. Dist. LEXIS 55387 at *7 (S.D.N.Y. July 22, 2008) (quoting *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 401 (S.D.N.Y. 2007)). "Broad and conclusory terms... are insufficient to fulfill this element." *Id.*

[11] "Disinterested malevolence" is critical to this cause of action; "the plaintiff cannot recover unless the defendant's conduct was not only harmful, but done with the sole intent to harm." *Twin Labs., Inc. v. Weider Health &*

Dist. LEXIS 55387 at *7 (citing *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 142-43; 480 N.E.2d 349; 490 N.Y.S.2d 735 (1985)).

Plaintiff's claim is deficient because her allegation that defendants made false allegations about her to law enforcement, knowing they were false, conflicts with the requirement that the act must be otherwise lawful. Additionally, plaintiff's complaint alleges that Doe made false statements about her in order to "deflect criticism from her own grossly improper conduct, and to save her job." Compl. ¶ 41. Thus, the requirement that defendant be motivated solely by a malicious intention to injure is absent. It would be futile to include this claim in the amended complaint.[12]

**4. Unjust Enrichment**

To succeed on a claim of unjust enrichment, a "plaintiff must show that (1) defendant was enriched (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit... defendant to retain what is sought to be recovered."

---

*Fitness*, 900 F.2d 566, 571 (2d Cir. 1990). "[M]otives other than disinterested malevolence, such as profit, self-interest, or business advantage will defeat a prima facie tort claim." *Id.* (quotation marks omitted).

[12]Jetblue additionally argues that plaintiff may not base a prima facie tort claim on the same facts as underlie her other tort claims. However, "[w]here relief may be afforded under traditional tort concepts, prima facie tort may not be invoked as a basis to sustain a pleading which otherwise fails to state a cause of action in conventional tort. However, where a traditional tort remedy exists, a party will not be foreclosed from pleading, as alternative relief, a cause of action for prima facie tort." *Freihofer v. Hearst Corp.*, 65 N.Y.2d 135, 143; 490 N.Y.S.2d 735; 480 N.E.2d 349 (1985) (citations omitted).

*Lake Minnewaska Mountain Houses Inc. v. Rekis*, 259 A.D.2d 797,

798; 686 N.Y.S.2d 186 (3d Dept. 1999) (quotations omitted);

*accord Golden Pacific Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir.

2001). Plaintiff has not alleged that Jetblue was enriched at her

expense. Instead, her complaint states only that Jetblue

"charged" her a sum of $13,448.[13] Amendment of this claim would

be futile.


**C. Claims Whose Amendment is not Futile[14]**

**1. False Arrest**

"The common law tort of false arrest is a species of false

imprisonment... Under New York law, the elements of a false

imprisonment claim are: '(1) the defendant intended to confine

[the plaintiff], (2) the plaintiff was conscious of the

confinement, (3) the plaintiff did not consent to the confinement

and (4) the confinement was not otherwise privileged.'" *Singer v.

Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) (quoting

*Broughton v. State of New York*, 373 N.Y.S.2d 87, 93; 37 N.Y.2d

451; 335 N.E.2d 310 (1975)). The "favorable termination of the

proceedings is not an element of this tort." *Singer*, 63 F.3d at

118. A defendant is liable for false arrest if, with the intent

---

[13]At oral argument, counsel to plaintiff confirmed that plaintiff had not yet paid the ordered restitution.

[14]The question of whether defendant Jetblue may be held vicariously liable for the actions of agent Doe may be taken up if and when plaintiff files an amended complaint.

to have the plaintiff arrested, he makes false statements to the police and instigates an arrest. *See Weintraub*, 423 F.Supp.2d at 56; *see also Russell v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997). There is no liability when the arrest follows an independent police review of the matter, even if the information provided by the defendant to the police is later found to be erroneous. *See Russell v. Crossland Sav. Bank*, 111 F.3d 251, 257 (2d Cir. 1997).[15] Similarly, a plaintiff has no claim for false arrest when a private individual "merely seek[s] police assistance or furnishes information to law enforcement authorities." *Du Chateau v. Metro-North Commuter R.R. Co.*, 253 A.D.2d 128, 131, 688 N.Y.S.2d 12, 15 (1st Dept. 1999).

Plaintiff has not alleged that defendants intended to procure her arrest. Her complaint simply states that a Jetblue security agent approached her in the terminal and escorted her to the security office, where she was detained and later arrested. Compl. at ¶¶ 42, 46.[16] However, if plaintiff were to plausibly allege that defendants intended to procure her arrest, she would successfully state a claim for false arrest, as she has alleged that defendants forcefully escorted her to TSA and repeated false

---

[15]See also *Du Chateau v. Metro-North Commuter R.R. Co.*, 253 A.D.2d 128, 131, 688 N.Y.S.2d 12, 15 (1st Dept. 1999) (no liability where private individual "merely seek[s] police assistance or furnishes information to law enforcement authorities.")

[16]Plaintiff's allegations under her false arrest claim state: "As a result of defendants'... conduct, plaintiff was subjected to an illegal, improper, and false arrest..." Compl. at ¶ 53.

statements regarding an alleged bomb threat, as a result of which she was detained and later arrested.[17]

## 2. Negligence

As stated above, plaintiff has failed to plead a claim for negligent hiring, training, retention, and supervision. If plaintiff plausibly alleges facts indicating that defendant Jetblue knew or should have known of Doe's propensity for

---

[17]Defendant Jetblue contends that plaintiff has failed to state a claim because plaintiff does not allege that Jetblue employees detained her, does not allege that Jetblue employees interrogated or arrested her, and does not allege that Jetblue employees prosecuted her. However, these allegations are not required in order to state a claim for relief. The defendant need not have made the arrest itself, as long as it 'instigated' the arrest.

Jetblue additionally argues that it merely provided information to the TSA, and that plaintiff was arrested following an independent investigation. However, there is no indication that law enforcement made efforts during plaintiff's five hour interrogation to ascertain whether the statements reported by Doe were true, which would have permitted them to form an independent basis for suspicion and arrest of plaintiff. Instead, plaintiff alleges that officers focused on extracting a confession from her, which she refused to give. Moreover, contrary to defendant Jetblue's claims, it did not simply report plaintiff to police. Plaintiff alleges that a Jetblue security officer located her in the airport and ordered her to accompany him to the security office, thereby playing a direct role in plaintiff's detention and arrest.

See *Mitchell v. Victoria Home*, 377 F.Supp.2d 361, 377 (S.D.N.Y. 2005) (where plaintiff was arrested nine months after nursing colleague alleged she abused patients, and long after she was fired, claim dismissed for failure to allege employer had a role in her confinement); *Du Chateau v. Metro-North Commuter R.R. Co.*, 253 A.D.2d 128, 131; 688 N.Y.S.2d 12 (2d Dept. 1999) (where plaintiff was arrested based on good faith complaint of assault by a train conductor, which was uncontested, and police exercised independent judgment, claim dismissed); *Courtman v. Hudson Val. Bank*, 37 A.D.3d 181, 182; 829 N.Y.S.2d 67 (1st Dept. 2007) (where bank made good faith report that plaintiff stole $40,000 and took no other action other than making a report, claim dismissed against bank); *Nevin v. Citybank, N.A.*, 107 F.Supp.2d 333 (S.D.N.Y. 2000) (where security person reported to the police that plaintiff acted suspiciously when using a credit card, police conducted their own investigation, and no arrest was made, claim dismissed).  In this case, plaintiff has alleged that Jetblue was an active participant in turning plaintiff over to TSA authorities with a report that she had made a violent threat, thereby effecting her confinement and arrest, and that Jetblue did so knowing that the information was false.

retaliating against customers for making complaints, or that
there were deficiencies in employee training that caused the
harm, such that Jetblue could be said to have been deliberately
indifferent to the risk of false accusations against passengers,
amendment to her negligence claim would not be futile. *See
Kenneth R.*, 654 N.Y.S.2d at 793, *Carter*, 2004 U.S. Dist. LEXIS
25633 at *16, *Phillips*, 453 F. Supp. 2d. at 726.

## 3. Intentional Infliction of Emotional Distress

In New York, a claim for Intentional Infliction of Emotional
Distress ("IIED") has four elements: "(1) extreme and outrageous
conduct, (2) intent to cause severe emotional distress, (3) a
causal connection between the conduct and the injury, and (4)
severe emotional distress." *Bender v. City of New York*, 78 F.3d
787, 790 (2d Cir. 1996). Satisfying the 'outrageousness' element
"is difficult, even at the pleadings stage." *Fahmy v. Duane
Reade, Inc.,* 2005 U.S. Dist. LEXIS 20929, *20 (S.D.N.Y. September
26, 2005). Federal courts applying New York law regularly dismiss
IIED claims. *See Gerzog v. London Fog Corp*., 907 F.Supp. 590, 604
(E.D.N.Y. 1995) (noting that it is almost exclusively in cases
which involve inappropriate sexual conduct, "and more
significantly, battery," where courts have declined to dismiss
IIED claims; *Mariani*, 982 F.Supp. at 275 (citing cases). To
survive a motion to dismiss, "[t]he conduct alleged must be such

that it can be fairly characterized as egregious, utterly despicable, heartless or flagrant." *Lydeatte v. Bronx Overall Economic Development Corp.,* 2001 U.S. Dist. LEXIS 1670, *6 (S.D.N.Y. February 22, 2001); *see also Freedom Calls Found. v. Bukstel,* 2006 U.S. Dist. LEXIS 65357, *10-11 (E.D.N.Y. September 13, 2006) (intent to inflict distress is not sufficient; the conduct must also be reprehensible). New York courts have sustained IIED claims where there is "some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy." *Stuto v. Fleishman*, 164 F.3d 820, 828 (2d Cir. 1999) (collecting cases).

Plaintiff's allegations are sufficient to satisfy the elements of IIED. Plaintiff has alleged that defendants falsely accused her of making a bomb threat and that she was arrested and prosecuted as a result. The allegation that a person has threatened to blow up a commercial airplane is an accusation of heinous, criminal action that is likely to subject a person to threats, abuse, and public humiliation. This is sufficient to plead the elements of outrageous conduct and the intent to cause distress. Plaintiff has further alleged that, in addition to suffering from the pain of the accusation itself, she was subjected to five hours of intensive interrogation during which she was accused of being a drug user, subjected to the

humiliation of having her story reported in the national and international press, and fired from her job, which facts support her claim that she suffered severe emotional distress. Plaintiff's complaint has sufficiently alleged the elements of an IIED claim.[18]

## 4. Defamation

Under New York law, a plaintiff claiming defamation must show that the defendant (1) made a false and defamatory statement of fact (2) regarding plaintiff, and (3) published it to a third party, (4) with the applicable level of fault, (5) which statement resulted in injury to the plaintiff or is defamatory *per se*, and (6) is not protected by privilege. *Albert v. Loksen*, 239 F.3d 256, 265-66 (2d Cir. 2001). In diversity actions, "the mode of pleading defamation is governed by Rule 8, Fed. R. Civ. P., which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and to raise the defense

---

[18]Defendant cites cases in which a false statement resulting in an arrest was insufficient to state a claim for IIED because the behavior was not sufficiently outrageous, ignoring the important factor present here: plaintiff was accused of a deadly serious crime that could result in her being charged as a terrorist. The crimes in the cases cited by defendant are simply not comparable. *See Slatkin v. Lancer Litho Packaging Corp.*, 33 A.D.3d 421; 822 N.Y.S.2d 507 (1st Dept. 2006) (sending faxes and calling plaintiff threatening arrest if a debt was not paid and securing plaintiff's arrest by means of false statements not sufficiently outrageous); *Courtman v. Hudson Val. Bank*, 37 A.D.3d 181; 829 N.Y.S.2d 67 (1st Dept. 2007) (bank made good faith report to the police that plaintiff had stolen money, therefore no IIED claim); *Nevin v. Citybank N.A.*, 107 F.Supp.2d 333 (S.D.N.Y. 2000) (plaintiff's allegation that she was racially profiled and singled out for a credit card investigation not sufficiently outrageous).

of *res judicata* if appropriate. The pleading of additional evidence is not only unnecessary, but in contravention of proper pleading procedure. Such additional information is "now available through the liberalized discovery provisions." *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir. 1980). The complaint need not state the precise words of the defamatory statements. *Kelly v. Schmidberger*, 806 F.2d 44, 46 (2d Cir. 1986). Nor must the complaint state the time, place and speaker of each defamatory statement, as "[t]hose are Rule 9(b), not Rule 8(a) requirements." *Sterling Interiors Group, Inc. v. Hayworth, Inc*., 1996-2 Trade Cas. (CCH) P71,557, *74 (S.D.N.Y. July 30, 1996); *see also Pasqualini v. Mortgageit, Inc*., 498 F.Supp.2d 659, 672 (S.D.N.Y. 2007). "The central concern is that the complaint afford defendant sufficient notice of the communications complained of to enable him to defend himself." *Kelly*, 806 F.2d at 46 (citation omitted).

Plaintiff's complaint alleges that defendants defamed her by providing "false and misleading information to various news agencies and/or media outlets" regarding plaintiff, knowing that the information was false and misleading, acting with malice or reckless disregard for the truth, knowing that the information would reach a vast audience through media outlets, resulting in prejudicial news coverage and "destroying both her personal and professional reputation." Compl. ¶¶ 95-102. The claim for relief

for defamation also incorporates by reference plaintiff's earlier allegation that Doe falsely accused plaintiff of having said, "well I have a bomb in my bag" and other threatening comments. Compl. ¶¶ 37-38. These allegations are sufficient to state a claim for relief. Defendants have been put on notice that plaintiff is complaining about statements made by Jetblue employees to media sources concerning plaintiff's allegedly threatening comments regarding a bomb on an airplane on or around April 15, 2008. "It would be unfair to require more of a plaintiff who was not present when the allegedly defamatory words were spoken." *Sterling Interiors*, 1996-2 Trade Cas. (CCH) P71,557, at *74. Accordingly, plaintiff's complaint provides adequate notice of the communications complained of.[19]

## CONCLUSION

For the reasons stated herein, defendant Jetblue's motion to dismiss is granted. To the extent any amendment would not be futile, plaintiff is granted leave to file an Amended Complaint within 30 days of the date of this decision. If plaintiff seeks to assert diversity jurisdiction, she must either plead the

---

[19]Cases cited by defendant concerning the dismissal of defamation claims for failure to plead certain specific information are not to the contrary, as they refer to allegations of defamation that are vague and do not provide notice, unlike the allegations here. *See, e.g.*, *Amar v. Hillcrest Jewish Ctr.*, 2008 U.S. Dist. LEXIS 108180, *21-23 (E.D.N.Y. March 31, 2009) (defamation claim dismissed where plaintiff asserted that his former employers were making defamatory statements about him over a ten year period, without any reference to the content, timing, or source of the statements, and lacking any direct knowledge that statements were, in fact, made).

domicile of defendant Doe, or dismiss Doe from the case. The pending motion by Jetblue to dismiss the complaint against Doe for failure to effect proper service is denied as moot. The Clerk is directed to furnish a copy of the within to all parties and the assigned Magistrate Judge.

SO ORDERED.

Dated:    Brooklyn, New York
          July 29, 2009

                    By: /s/ Charles P. Sifton (electronically signed)
                                United States District Judge