UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
ROSALINDA BAEZ,

                             Plaintiff,                          **09 CV 0596 (NGG) (SMG)**

       -against-

JET BLUE AIRWAYS and TIFFANY MALABET,

                         Defendants.
------------------------------------------------------------------------X

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT JETBLUE'S MOTION TO DISMISS

Jon L. Norinsberg, Esq.
225 Broadway, Suite 2700
New York, New York 10007
(212) 791-5396

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STANDARD  FOR SUMMARY JUDGMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I.    JET BLUE IS VICARIOUSLY LIABLE FOR THE INTENTIONAL TORTS OF
      DEFENDANT  MALABET  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

II.   PLAINTIFF HAS STATED VIABLE INTENTIONAL TORT CLAIMS UNDER NEW
      YORK STATE LAW  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      A.    Judge Sifton Specifically Held That Plaintiff Has Viable Defamation and IIED
            Claims, and This is Now Law of the Case  . . . . . . . . . . . . . . . . . . . . . . . . .  10

      B.    Plaintiff Has Stated A Viable False Arrest Claim Under
            New York State  Law  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

            i.     Judge Sifton Has Already Rejected JetBlue's "Civilian Complaint"
                   Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            ii.    Judge Sifton Has Already Rejected Defendant's "Guilty Plea"
                   Argument  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

            iii.   Plaintiff's Guilty Plea Does Not Bar Her  False Arrest Claim, Since There
                   Was  Never An  "Adjudication" of The Bomb Threat Charges  . . . . . . . 16

            iv.    JetBlue's Role In Facilitating Plaintiff's Arrest Is Sufficient To Establish
                   Intent  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

III.  JET BLUE MAY BE SUED DIRECTLY UNDER NEW YORK STATE LAW FOR ITS
      NEGLIGENT HIRING, TRAINING AND SUPERVISION OF DEFENDANT
      MALABET  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

IV.   JETBLUE IS NOT ENTITLED TO IMMUNITY UNDER FEDERAL STATUTE  . . . 22

      A.    There is No Immunity For Statements Which Are "False, Inaccurate or
            Misleading"  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

V.     PLAINTIFF'S STATE LAW CLAIMS ARE NOT EXPRESSLY PREEMPTED BY
       FEDERAL LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

       A.     There is A Strong Presumption Against Federal Preemption . . . . . . . . . . . . . . 24

       B.     Courts in This Circuit Have Almost Uniformly Ruled Against Preemption . . . 24

       C.     Plaintiff's Claims Have Nothing Whatsoever To Do With The Provision of
              "Services" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

       D.     Preemption is Particularly Unwarranted For State Tort Claims Such As False
              Arrest And False Imprisonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

       E.     Judge Sifton Rejected JetBlue's Preemption Argument . . . . . . . . . . . . . . . . . . 27

VI.    PLAINTIFF'S STATE LAW CLAIMS ARE NOT IMPLIEDLY PREEMPTED BY
       FEDERAL LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

       A.     Courts Will Not Imply Preemption When There Is Already An Express
              Preemption Clause Contained In The Statute . . . . . . . . . . . . . . . . . . . . . . . . . . 28

       B.     Congress' Failure to Repeal The "Savings Clause" Further Militates Against
              Finding Implied Preemption . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

       C.     A Finding Of Implied Preemption Would Leave Passengers With No Remedy For
              Tort Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VII.   PLAINTIFF HAS STATED A VIABLE FALSE ARREST CLAIM AGAINST JET
       BLUE UNDER FEDERAL LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

       A.     Private Parties May Be Held Liable Under 42 U.S.C. § 1983 . . . . . . . . . . . . . 30

       B.     Jet Blue Actively Participated in Plaintiff's Arrest and Thus Acted Under "Color
              of State Law" . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

       C.     Plaintiff Has Sufficiently Alleged "Personal Responsibility" On The Part of
              JetBlue . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

VIII.  PLAINTIFF HAS STATED A VIABLE FAIR TRIAL CLAIM AGAINST JET BLUE
       UNDER FEDERAL LAW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

       A.     Heck v. Humphrey Has No Application to this Case, Because
              Plaintiff Was Not "In the Custody of the State" at the Time The Action Was
              Commenced . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

B.      Forwarding False Evidence to Prosecutors Violates the Accused's Right to a Fair
        Trial and Is Actionable under 42 U.S.C. § 1983 .......................... 34

IX.     JET BLUE MAY BE HELD LIABLE UNDER MONELL FOR ITS UNLAWFUL
        POLICY, CUSTOM OR PRACTICE OF ARRESTING PASSENGERS WITHOUT
        PROBABLE CAUSE  ..................................................... 36

X.      JET BLUE MAY BE HELD LIABLE UNDER SECTION 1983 FOR ITS FAILURE TO
        TRAIN ITS EMPLOYEES  ................................................. 38

CONCLUSION  ........................................................... 39

## TABLE OF AUTHORITIES PAGE

Adickes v. S.h. Kress & co., 398 U.S. 144 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

Adorno v. Corr. Servs. Corp. 312 F. Supp. 2d 505 (S.D.N.Y. 2004) . . . . . . . . . . . . . . . . . . . . . 33

Batista v. Rodriguez, 702 F.2d 393 (2d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 36

Bayaa v. The American-Arab Anti-Discrimination Committee, 249 F. Supp. 2d 1198
   (C.D.Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Bd. of County Comm'rs v. Brown, 520 U.S. 397 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 19

Bouchard v. New York Archdiocese, No. 04 Civ. 9978, 2006 U.S. Dist. LEXIS 31393
   (S.D.N.Y. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 33

California v. Arc America Corp., 490 U.S. 93 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Carrington v. City of New York, 201 A.D.2d 525 (2d Dept. 1994) . . . . . . . . . . . . . . . . . . . . . 14

Carter v. Port. Auth. Of N.Y. & N.J., No. 03 Civ. 8751, 2004 U.S.Dist. LEXIS 25633
   (S.D.N.Y. December 20, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Chen v. City of Syracuse, No.06 Civ.1143, 2009 U.S. Dist LEXIS 16227
   (N.D.N.Y. March 2, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Chodkowski v. City of New York, No. 06 Civ. 7120, 2007 U.S. Dist. LEXIS 67822
   (S.D.N.Y. Sept. 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Cippollone v. Liggett Group, Inc., 505 U.S. 504 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

City of Canton v. Harris, 489 U.S. 378 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

Cleveland v. Piper Aircraft Corp., 985 F. 2d. 143 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . 29

Coakley v. Jaffe, 49 F. Supp. 2d 615 (S.D.N.Y. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 30

Courtenay Communications Corp. v. Hall, 334 F.3d 210 (2d Cir. 2003) . . . . . . . . . . . . . . . 9, 19

CSX Transportation, Inc., v. Easterwood, 507 U.S. 658 (1993) . . . . . . . . . . . . . . . . . . . . . . . 24

Curley v. Amr Corp., 153 F.3d 5 (2d Cir. 1998) ................................... 14

Curley v. American Airlines, Inc., 846 F. Supp. 280 (S.D.N.Y. 1994) ................... 27

Davis v. Cotov, 214 F. Supp. 2d 310 (E.D.N.Y. 2002) .............................. 34

Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198 (2d Cir. 1999) ............... 8

Dunn v. City of Syracuse, 83 A.D.2d 783 (4th Dept.1981) ........................... 14

East Coast Novelty Co., Inc., v. City of New York, 781 F. Supp. 999
   (S.D.N.Y. 1992) ...................................................... 17

Florida v. Bostick, 501 U.S. 429 (1991) .......................................... 20

Friedman v. New York City Administration for Children's Services, et al., No. 04 Civ. 3077,
   2005 U.S. Dist. LEXIS 42414 (E.D.N.Y 2005) ..................................... 31

Geisler v. Petrocelli, 616 F.2d 636 (2d Cir. 1980) .................................. 12

Gentile v. County of Suffolk, 926 F.2d 142 (2d Cir. 1991) ........................... 39

Goldman v. Belden, 754 F.2d 1059 (2d Cir. 1985) .................................. 8

Goonewardena v. AMR Corp., No. 08 Civ. 4141 (NGG), 2008 U.S. Dist. LEXIS 96013
   (E.D.N.Y. November 25, 2008) .............................................. 25

Gotbetter v. Port Authority of New York and New Jersey, No.98 Civ.6762, 2000 U.S.  Dist.
   LEXIS 3838 (S.D.N.Y. March 28, 2000) ...................................... 14

Gottlieb v. County of Orange, 84 F.3d 511 (2d Cir. 1996) ........................... 37

Granger v. Harris, No.05 Civ.3607, 2007 U.S. Dist. LEXIS 3007
   (E.D.N.Y. 2007) ...................................................... 31

Greene v. Wright, 389 F. Supp. 2d 416 (D. Conn. 2005) ......................... 35, 36

Greenwood Trust v. Massachusetts, 971 F.2d. 818 (1st Cir. 1992) ..................... 24

Grinnell v. Weston. 95 A.D. 454 (1st Dept. 1904) ................................. 14

Hall v. Danforth, 172 A.D.2d 906 (3d Dept. 1991) .................................. 9

Halperin v. Salvan, 499 N.Y.S.2d 55 (1st Dept. 1986) ................................. 11

Haring v. Prosise, 103 S.Ct. 2368 (1983) ....................................... 16, 17

Henry v. City of New York, No.02 Civ.4824, 2003 U.S.  Dist. LEXIS 15699
      (S.D.N.Y. September 5, 2003) ................................................ 36

Huang v. Johnson, 251 F. 3d 64 (2d Cir. 2001) ..................................... 34

Hutchinson v. Britsh Airways, No. 08 Civ. 2781 (NGG), 2009 U.S. Dist. LEXIS 2881
      (E.D.N.Y. April 9, 2009) ................................................... 19

Iqbal v. Hasty, 490 F.3d. 143 (2d Cir. 2007) .................................... 8, 19

Iskandar v. Village of Forest Park, 690 F.2d 126 (7th Cir. 1982) ....................... 37

Jocks v. Tavernier, 316 F.3d 128 (2d Cir. 2003) ................................... 34

Kay v. Usair, Inc., Ccair, Inc., No. 93 Civ 9856, 1994 U.S.  Dist. LEXIS 10662
      (E.D.PA. July 28, 1994) ................................................... 30

Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D. 2d 159
      (2d Dept. 1997) ....................................................... 21, 22

Kent v. Katz, 312 F.3d 568 (2d Cir. 2002) ..................................... 17, 18

Kern v. City of Rochester,  93 F.3d. 38 (2d Cir. 1996) ............................... 37

Kings Choice Neckwear, Inc. v. DHL Airways, Inc., No.02 Civ.9580, 2003 U.S.  Dist. LEXIS
      17507 (S.D.N.Y. Oct. 1, 2003) ............................................. 25

Lanza v. American Airlines, Inc., No. 93 Civ.4246, 1996  U.S.  Dist. LEXIS 22275
      (E.D.N.Y May 23, 1996) ............................................ 25, 28, 29

Levine v. Gurney, 149 A.D. 2d 473 (2d Dept. 1989) ................................. 11

Leather v. Eyck, 180 F.3d 420 (2d Cir. 1999) ................................... 33, 34

Manley v.  Mazzuca, No. 01 Civ. 5178, 2007 U.S. Dist. LEXIS 88000
      (S.D.N.Y. Nov. 30, 2007) ............................................ 10, 11, 12

Margolis v. United Airlines, Inc., 811 F. Supp. 318 (E.D. Mich. 1993) ................... 30

-vi-

Mayers v. New York Community Bancorp., Inc., No.03 Civ. 5837, 2005 U.S. Dist. LEXIS
20279 (E.D.N.Y Aug. 31, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Monell v. Department of Social Services of the City of New York,
436 U.S. 658 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37, 38, 39

Official Comm. of Unsecured Creditors of Color Tile, Inc., v. Coopers v. Lybrand, LLP,
322 F.3d 147 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Patane v. Clark, 508 F.3d 106 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Patterson v. County of Ofoneida, 375 F.3d 206 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . 37

Peterson v. Continental Airlines, Inc., 970 F. Supp. 246 (S.D.N.Y. 2002) . . . . . . . . . . . . . 27, 30

Petrucelli v. Hasty, No. 05 Civ. 2002, 2009 U.S. Dist. LEXIS 24889
(E.D.N.Y. March 25, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Phillips v. City of New York, 453 F. Supp. 2d 690 (S.D.N.Y. 1996) . . . . . . . . . . . . . . . . . . . . 33

Pirre v. Printing Developments, Inc., 432 F. Supp. 840 (S.D.N.Y. 1977) . . . . . . . . . . . . . . . . 12

Pitman v. Grayson, 869 F. Supp. 1065 (S.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Plonka v. Brown, No. 00 Civ. 7651, 2001 U.S. App. LEXIS 1694 (2d Cir. 2001) . . . . . . . . . . 33

Powell v. Shopco. Laurel Co., 678 F.2d 504 (4th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . 37

Powers v. Coe, 728 F.2d 97 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . 34, 35

Riviello v. Waldron, 47 N.Y.2d 297 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Rojas v. Alexander's Department Store, 924 F.2d 406 ( 2d Cir. 1991) . . . . . . . . . . . . . 33, 37, 38

Rombom v. United Airlines, Inc., 867 F. Supp. 214 (S.D.N.Y. 1994) . . . . . . . . . . . . . 24, 28, 30

Rowley v. City of New York, No. 00 Civ. 1793, 2005 U.S. Dist. LEXIS 22241
(S.D.N.Y. Sept. 29, 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 23

Russell v. Crossland Sav. Bank, 11 F.3d 251 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . 13

Sagendorf-Teal v. County of Rensselaer, 100 F.3d 270 (2d Cir. 1996) . . . . . . . . . . . . . . . 10, 11

Sedigh v. Delta Airlines, Inc., 850 F. Supp. 197 (E.D.N.Y 1994) . . . . . . . . . . . . . . . . . . . . . . 27

Shaw v. Delta Airlines, Inc., 463 U.S. 85 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Shqeirat v. U.S. Airways Corpp., Inc., 515 F. Supp. 2d 984 (D. Minn. 2007) . . . . . . . . . . . . 23

Singer v. Fulton, 63 F. 3d 110 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Smith v. Brookshire Brothers, 519 F.2d 93 (5th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Sorlucco v. New York City Police Dept. , 971 F.2d 864 (2d Cir. 1992) . . . . . . . . . . . . . . . . . 37

Spinelli v. Sec'y of the DOI, No. 99 Civ. 8163, 2006 U.S. Dist. LEXIS 76129
(E.D.N.Y. Oct. 19, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Stag v. Delta Airlines, inc., 849 F. Supp. 179 (E.D.N.Y 1994) . . . . . . . . . . . . . . . . . . . . . . 25, 26

Stanley v. United States of America, 894 F. Supp. 636 (W.D.N.Y. 1995) . . . . . . . . . . . . . 9, 23

Stuto v. Fleishman, 164 F.3d 820 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Sullivan v. Board of Educ., 517 N.Y.S.2d 871 (1st Dept. 1986) . . . . . . . . . . . . . . . . . . . . . . 11

Taylor v. City of New York, No. 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429
(S.D.N.Y. June 19, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Trinidad v. American Airlines, Inc., 932 F. Supp. 521 (S.D.N.Y. 1996) . . . . . . . . . . . . . . 25, 28

United States v. Mendenhall, 446 U.S. 544 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

United States v. Price, 383 U.S. 787 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

United States v. Tehrani, 49 F.3d 54 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Vann v. City of New York, 72 F.3d. 1040 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Villante v. Department of Corrections of the City of New York, 786 F.2d 516
(2d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Von Hundertmark v. Boston Professional Hockey Assoc., Inc., No. 93 Civ. 1369, 1996 U.S.
Dist. LEXIS 20231 (E.D.N.Y March 7, 1996) . . . . . . . . . . . . . . . . . . . . . . 25, 26, 27, 29

Walker v. City of New York, 974 F.2d 293 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

Wallace v. City of New York, No.90 Civ.2064, 1992 U.S. Dist. LEXIS 13388
(S.D.N.Y. Sept. 3, 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Wallace v. Dillon, 921 F. Supp. 946 (E.D.N.Y 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Weintraub v. Board of Educ. of City of New York, 423 F. Supp. 2d 38
(E.D.N.Y 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

White v. Frank, 855 F.2d 956 (2d Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Wright v. Cayan, 817 F.2d 999 (2d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 35, 36

## PRELIMINARY STATEMENT

Plaintiff respectfully submits this Memorandum of Law in opposition to defendant JetBlue's motion to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12 (b)(6). For the reasons set forth below, JetBlue's motion to dismiss should be denied in its entirety.

*First*, JetBlue has completely ignored the doctrine of *respondeat superior*. Under this doctrine, JetBlue is legally responsible for the tortious acts committed by its employee, Ms. Malabet, within the scope of her employment. Despite the clear relevance of this doctrine, JetBlue never once mentions *respondeat superior* in its motion to dismiss. Instead, Jet Blue addresses only plaintiff's constitutional claims, completely disregarding the employer-employee relationship which exists between itself and Ms. Malabet. Once the doctrine of *respondeat superior* is actually considered, JetBlue's motion fails as a matter of law.

*Second*, JetBlue has wholly ignored the prior rulings of Judge Sifton with regard to plaintiff's tort claims under New York state law. Judge Sifton specifically held that plaintiff has viable claims for defamation and IIED, and these holdings are now law of the case. Further, Judge Sifton specifically rejected the "civilian complaint" and "guilty plea" arguments which JetBlue is now making regarding plaintiff's false arrest claim. These rulings are also law of the case and should not be disturbed.

*Third*, JetBlue's claims of immunity and federal preemption are completely without merit. Immunity is not available because the specific statute at issue – 49 U.S.C.S. § 44941(b) – specifically exempts statements which are "false, inaccurate or misleading." This is precisely what plaintiff has alleged in her Amended Complaint. There is also no basis for finding preemption in this case. Courts in this district have almost always declined to find preemption for state law claims such

-1-

as those asserted in this action. Moreover, this Court has expressly held that preemption will not be found where, as here, the federal statute does not provide for a private right of action. Thus, JetBlue's preemption should be rejected.

*Fourth*, with respect to plaintiff's constitutional claims, JetBlue has micharacterized the nature of plaintiff's allegations. Plaintiff has *not* merely alleged that JetBlue passed on false information to law enforcement officials. Rather, as Judge Sifton noted, "plaintiff has alleged that Jet Blue was an *active participant* in turning plaintiff over to TSA authorities with a report that she had made a violent threat, thereby *effecting her confinement and arrest*, and that Jet Blue did so *knowing that the information was false*." See Amended Memorandum Opinion and Order ("Amended Order"), at 22, n.17 (emphasis supplied). Thus, the entire factual premise of JetBlue's "private action" argument is erroneous and should be rejected.

*Fifth*, with respect to plaintiff's claims under Monell v. Dep't of Social Servs., 436 U.S.658, 690-91 (1978), the Second Circuit has expressly held – despite JetBlue's claims to the contrary – that such a claim *can* be brought against private employers such as JetBlue. Moreover, Judge Sifton also stated that plaintiff could bring such an action against JetBlue. See Amended Order at 13, n.4. "Another means of holding Jetblue liable in this case would be to allege that Jetblue had "'(1) an official policy or custom that (2) [caused her] to be subjected to (3) a denial of a constitutional right.'" Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983))." This is precisely what plaintiff has alleged in her Amended Complaint. Accordingly, JetBlue's motion to dismiss this claim must be denied.

## STATEMENT OF FACTS

On April 15, 2008, at approximately 6:23 a.m., plaintiff Rosalinda Baez arrived at JFK International Airport, in the County of Queens, in the City and State of New York. (Am. Compl. ¶ 11). At that time, plaintiff checked in at the JetBlue counter, and was issued a ticket to board Flight 1061, which was scheduled to depart to Austin, Texas at 8:05 a.m. (Id. ¶ 8; Ex. A). At the check-in counter, the JetBlue representative informed Ms. Baez that her plane would be leaving from Gate 18.(Id. ¶ 13). The JetBlue representative did not inform Ms. Baez, however, that Gate 18 was in a separate building which was located in a different part of the airport. (Id. ¶ 14).

Thereafter, plaintiff proceeded through security and waited for the plane in a Wi-Fi area, so that she could work on her computer while waiting for her flight. (Id. ¶ 15). Approximately one hour later, when Ms. Baez had not heard her flight announced, she went to check on it and was then told that Flight 1061 was departing from a different terminal, and that she had to take a bus to get to this terminal. (Id. ¶ 16).

### Plaintiff's Arrival At The Gate

When plaintiff finally arrived at the departure gate, she noticed that the area was empty, so she approached JetBlue agent Tiffany Malabet ("defendant Malabet"), who was coming from the departure jetway. (Id. ¶ 17). Plaintiff told defendant defendant Malabet that she had a boarding pass for Flight 1061, and asked to be permitted to board the plane since it was still at the gate. (Id. ¶ 18).

Notwithstanding this fact, defendant Malabet stated to plaintiff Rosalinda Baez that "I just closed the flight and you ain't getting on it."(Id. ¶ 19). In response to this remark, plaintiff – who was a frequent flier with JetBlue, a member of their "True Blue" club, and an experienced

traveler – informed defendant Malabet that she had been at the airport since 6:30 a.m, and that she had not been told by JetBlue's counter representative that Gate 18 was located in a different terminal. (Id. ¶ 20). Plaintiff then showed defendant Malabet her boarding pass, which confirmed that plaintiff was a passenger on Flight 1061 to Austin. (Id. ¶ 21; Ex. A). Notwithstanding this fact, defendant Malabet refused to allow plaintiff Rosalinda Baez to board the plane, despite the fact that the aircraft was still at Gate 18. (Id. ¶ 22).

**The Actual Words Spoken By Plaintiff To Defendant Malabet**

Thereafter, plaintiff asked defendant Malabet what would happen to her bag if she now had to be booked on a different flight, and stated that she needed to know where her luggage would be in the event she would be taking a different flight to Texas. (Id. ¶ 23). Defendant Malabet informed plaintiff that her bag would be in Austin when she arrived there. (Id. ¶ 24). Plaintiff then responded: "That doesn't make any sense. Isn't it a security risk to let a bag go on a plane without a passenger, what if there was a bomb in the bag?" (Id. ¶ 25). Defendant Malabet then responded that TSA agents would know if there was a bomb in the bag, to which plaintiff stated "TSA – my ass." (Id. ¶ 26). That was the end of the conversation between plaintiff Rosalinda Baez and defendant Malabet. (Id. ¶ 27).

**Flight 1061 Remains On The Ground For Another Half-Hour**

At the time when her conversation ended, Flight 1061 was still on the ground and had not yet left Gate 18. (Id. ¶ 28). JetBlue Flight 1061 remained on the ground for an additional 30 minutes prior to taking off. (Id. ¶ 29). During this time, defendant Malabet did not contact any TSA agents, nor did she take any actions to have the airplane inspected for a bomb. (Id. ¶ 30).

-4-

**Plaintiff Is Allowed To Book Another Flight With JetBlue**

After speaking with defendant Malabet, plaintiff went to the customer service area to re-book her flight. (Id. ¶ 31). While the booking agent was re-booking plaintiff Rosalinda Baez on the next flight to Austin, defendant Malabet walked over and announced "this one thinks she's getting on a  flight." (Id. ¶ 32). When plaintiff Rosalinda Baez asked the re-booking agent to process her boarding pass, defendant Malabet, who was standing in the immediate vicinity, announced to the customer service representative: "She('s) nasty.  I['m] gonna mark her record." (Id. ¶ 33). Plaintiff Rosalinda Baez then commented that she was a frequent flier with JetBlue, and inquired as to why she was being treated in such a rude manner, but defendant Malabet refused to respond to this question.  (Id. ¶ 34).

 Plaintiff Rosalinda Baez was then given her boarding pass for the next Austin flight, which was scheduled to depart from JFK Airport at 1:05 p.m. (Id. ¶ 35, Ex. B).  Defendant Malabet was present when this new boarding pass was issued to plaintiff Rosalinda Baez. (Id. ¶ 35).

**Plaintiff Files An Electronic Amended Complaint  Against Defendant Malabet**

Thereafter, plaintiff Rosalinda Baez  returned to the main airport terminal, and she immediately logged onto her computer and filed an on-line complaint  with JetBlue detailing the events set forth above. (Id. ¶ 36). In this complaint , Ms. Baez specifically identified defendant Tiffany Malabet by her first name, and complained to JetBlue about the rude and offensive manner in which defendant Malabet had treated her. (Id. ¶ 37).

**The False Allegations Made By Defendant Malabet**

As a result of plaintiff's e-mail complaint, JetBlue officials spoke with defendant Malabet regarding the above incident. (Id. ¶ 38). This conversation took place *several hours later*, while plaintiff Rosalinda Baez was still waiting for her flight to Austin. (Id. ¶ 39). Upon being asked about plaintiff's complaint by JetBlue officials, defendant Malabet maliciously and deliberately lied about the words stated by plaintiff Rosalinda Baez during their conversation. (Id. ¶ 40).

Specifically, defendant Tiffany Malabet now claimed – for the first time – that plaintiff Rosalinda Baez had actually stated: "Well, *I have a bomb in my bag,* so are you guys going to turn the plane around 'cause I need my bag?" (emphasis supplied). (Id. ¶ 41). Defendant Malabet further falsely claimed that plaintiff Rosalinda Baez had stated that "TSA does not know how to do their f-ing job, because if it did, TSA would not catch [the bomb] and let it go through." (Id. ¶ 42). Plaintiff Rosalinda Baez never made any such statements, and defendant Malabet *knew* that she had never made such statements. (Id. ¶ 43).

**The Proof That Plaintiff Never Made A Bomb Threat**

The proof that plaintiff Rosalinda Baez had not, in fact, made any such bomb threat comes from, inter alia, the following facts: (1) defendant Malabet allowed plaintiff to re-book another JetBlue flight immediately after this incident; (2) defendant Malabet allowed Flight 1061 to take off without having plaintiff's baggage searched, despite the fact that the plane had remained at Gate 18 for *thirty minutes* after plaintiff's alleged bomb threat was supposedly made; (3) defendant Malabet did not contact TSA officials at the time the comment was allegedly made, and in fact, did not say anything about plaintiff's statements until *after* she was confronted about plaintiff's e-mail complaint to JetBlue; and (4) defendant Malabet allowed plaintiff to

-6-

remain free at JFK airport for several hours without contacting any law enforcement officials and/or supervisors at JetBlue.  (Id. ¶ 44).

**Plaintiff Is Arrested And Charged As A Result of Defendants' False Allegations**

As a result of defendants' manufactured claims, plaintiff Rosalinda Baez, who had relocated to the Wi-Fi area in the airport, and was waiting for her flight to Austin, was approached by a JetBlue "security" agent, and was ordered to accompany said agent to a security office.  (Id. ¶ 46). Thereafter, plaintiff Rosalinda Baez was unlawfully detained and interrogated for approximately five hours by law enforcement officials regarding the above incident.  (Id. ¶ 47).

During her interrogation, plaintiff Rosalinda Baez was repeatedly questioned about her patriotism and whether or not she had suicidal thoughts.  Further, plaintiff Rosalinda Baez was repeatedly questioned about the use of prescription drugs and told to "just admit what you are on." (Id. ¶ 48). Plaintiff Rosalinda Baez was also repeatedly pressured  to admit that she had made the above bomb threat to defendant Malabet, but plaintiff Rosalinda Baez steadfastly refused to make such a false confession.  (Id. ¶ 49).

At the conclusion of this interrogation, plaintiff Rosalinda Baez was arrested and charged with violating 49 U.S. C. § 46507 for making a false bomb threat. (Id. ¶ 50). Plaintiff Rosalinda Baez's unlawful arrest was due  to the blatantly false and misleading claims made by defendants to law enforcement officials. (Id. ¶ 51).

**Plaintiff's Arrest Makes International News And Destroys Her Career**

At the time of this incident,   plaintiff Rosalinda Baez was  employed as a Senior Vice President for Schematics, a company which provides Internet services for Dell Computer,  and

was earning an annual income of $190,000.00. (Id. ¶ 52). As a result of defendants' false allegations, plaintiff Rosalinda Baez was summarily terminated from her job with Schematics, and has been permanently blackballed in her industry. (Id. ¶ 53). Further, as a result of defendants' malicious lies, the story of plaintiff Rosalinda Baez's arrest became a national and international news story, receiving coverage in places as far away as South Africa, Denmark, Germany and Sweden, and destroying both her personal and professional reputation worldwide. (Id. ¶ 54).

Prior to this incident, plaintiff Rosalinda Baez had never before been arrested, and had never had any dealings with the criminal justice system. (Id. ¶ 55).

## STANDARD OF REVIEW

To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). The Court must "accept all of plaintiff's factual allegations in the Complaint as true and draw inferences from those allegations in the light most favorable to the  plaintiff." Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir. 1999).  The Court's function is "not to weigh the evidence that might be presented at trial but merely to determine whether the Complaint  itself is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). The Supreme Court's decision in Twombly does not "mandate a 'universal standard of heightened fact pleading.'" Petrucelli v. Hasty, No. 05 Civ. 2002, 2009 U.S. Dist. LEXIS 24889, at * 3  (E.D.N.Y. March 25, 2009). Rather, the Complaint "need only meet the requirements of our simplified notice pleading standard [which] relies on liberal discovery rules and summary judgment motions  to define disputed facts and issues and to dispose of  unmeritorious claims."

Courtenay Communications Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003).  In deciding a

motion to dismiss, "the issue is whether the claimant is entitled to offer evidence to support the

claims." Patane v. Clark, 508 F.3d 106, 111 (2d Cir. 2007).

## ARGUMENT

### I.   JET BLUE IS VICARIOUSLY LIABLE FOR THE INTENTIONAL TORTS OF DEFENDANT MALABET.

"Under New York law, an employer may be found liable for the tortious behavior of its

employee if such was within the scope of the latter's employment." Stanley v. United States of

America, 894 F. Supp. 636, 639 (W.D.N.Y. 1995), (citing Hall v. Danforth, 172 A.D.2d 906, 959

(3d Dep't 1991)).  This rule applies to *both* intentional and unintentional torts.  See Rowley v.

City of New York, No. 00 Civ. 1793, 2005 U.S. Dist. LEXIS 22241, *36 (S.D.N.Y. Sept. 30,

2005)("the doctrine of *respondeat superior* applies to [both] intentional and unintentional torts

that fall with the scope of employment"); Riviello v. Waldron, 47 NY2d 297, 303 (1979) (It is

"hornbook law" that "the doctrine of *respondeat superior* renders a master vicariously liable for a

tort committed by his servant while acting within he scope of his employment .... even [for]

intentional tort situations.").  Thus, JetBlue *can* be found liable for the intentional  torts of its

employee under principles of vicarious liability, despite its claims to the contrary.[1]

---

[1]Remarkably, Jet Blue never once mentions – much less analyzes –  the doctrine of *respondeat superior* in its motion to dismiss. Instead, Jet Blue chooses to focus myopically on plaintiff's constitutional claims, completely disregarding the employer-employee relationship which exists between itself and defendant Malabet, and the axiomatic principle that Jet Blue is *legally responsible* for the tortious actions taken by Malabet while she is acting within  the scope of her employment. See Rowley,  2005 U. S. Dist. LEXIS 22241, at * 36 ( "Where an employee acts within the scope of his or her employment, the employer generally is held liable for *all the employee's torts* under the doctrine of *respondeat superior*.") (emphasis supplied)

## II.   PLAINTIFF HAS STATED VIABLE INTENTIONAL TORT CLAIMS UNDER NEW YORK STATE LAW.

### A.   Judge Sifton Specifically Held That Plaintiff Has Viable Defamation and IIED Claims, and This is Now Law of the Case.

Under the law of the case doctrine, "if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case." Manley v. Mazzuca, No. 01 Civ. 5178, 2007 U.S. Dist. LEXIS 88000 * 9, (S.D.N.Y. Nov. 30, 2007) (citing Sagendorf-Teal v. County of Rensselaer, 100 F.3d 270, 277 (2d Cir. 1996)). See also 1 B James W. Moore, Jo D. Lucas & Thoms S. Currier, *Moore's Federal Practice,* 0.404[1] at 117 (1991) ("Under the doctrine of the law of the case, a decision on an issue of law made at one stage of a case becomes a *binding precedent* to be followed in successive stages of the same litigation.") (emphasis supplied). This principle ensures that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Official Comm. of Unsecured Creditors of Color Tile, Inc., v. Coopers v. Lybrand, LLP, 322 F.3d 147, 167 (2d Cir. 2003) (internal quotation marks omitted). See also Spinelli v. Sec'y of the DOI, No. 99 Civ. 8163, 2006 U.S. Dist. LEXIS 76129, * 25 (E.D.N.Y. Oct. 19, 2006) (same). The law of the case doctrine thus "dictates a general practice of refusing to reopen what has already been decided." Manley v. Mazzuca, No. 01 Civ. 5178, 2007 U.S. Dist. LEXIS 88000, * 9. The doctrine applies even *after* reassignment of a case from one judge to another. Wright v. Cayan, 817 F.2d 999, 1002 & n.3 (2d Cir. 1987).

In this case, there can be no question that Judge Sifton has already determined that plaintiff has stated viable claims both for Intentional Infliction of Emotional Distress ["IIED"] and defamation under New York State law. With respect to the IIED claim, Judge Sifton stated

-10-

as follows:

> Plaintiff's allegations are sufficient to satisfy the elements of IIED.  Plaintiff has alleged that defendants falsely accused her of making a bomb threat and that she was arrested and prosecuted as a result. The allegation that a person has threatened to blow up a commercial airplane is an accusation of heinous, criminal action that is likely to subject a person to threats, abuse and public humiliation. This is sufficient to plead the elements of outrageous conduct and the intent to cause distress.

Amended Order at 26.

Thus, Judge Sifton has *already ruled* that plaintiff has stated a viable claim for IIED. This ruling is now law of the case. See Manley, supra, Sagendorf-Teal, supra.  Further, Judge Sifton's ruling is well-supported by Second Circuit case law.  See Chen v. City of Syracuse, No.06 Civ.1143, 2009 U.S.  Dist LEXIS 16227, * 17 (N.D.N.Y. March 2, 2009) ("The Second Circuit has noted that New York State courts have sustained IIED claims where there is 'some combination of public humiliation, false accusations of criminal or heinous conduct, verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy.')" (quoting Stuto v. Fleishman, 164 F.3d 820, 828  (2d Cir. 1999)). See also Levine v. Gurney, 149 A.d.2d 473, 473 (2d Dept. 1989) (sustaining IIED claim where defendant filed false police report charging plaintiff with leaving scene of an accident); Sullivan v. Board of Educ., 517 N.Y.S.2d 871, 873 (1st Dept. 1986) (sustaining IIED claim based upon false accusation of theft, false imprisonment, verbal abuse, and threat of prosecution); Halperin v. Salvan, 499 N.Y.S.2d 55, 57-58 (1st Dept. 1986)  (sustaining IIED claim based upon malicious prosecution and false accusations of criminal conduct.).[2] Accordingly, defendants' motion to dismiss

---

[2] Judge Sifton expressly considered – and rejected – the case law cited by defendants. See Amended Order at 26, n. 20 ("The crimes in the cases cited by defendant are *simply not*

plaintiff's IIED claim must be denied.

With respect to plaintiff's defamation claim, Judge Sifton likewise rejected defendants' arguments for dismissal, holding as follows:

> [Plaintiff's] allegations are sufficient to state a claim for relief. Defendants have been put on notice that plaintiff is complaining about statements made by Jetblue employees to media sources concerning plaintiff's allegedly threatening comments regarding a bomb on an airplane on or around April 15, 2008. It would be unfair to require more of a plaintiff who was not present when the allegedly defamatory words were spoken. (internal quotation and citation omitted)

Amended Order at 27.

Thus, Judge Sifton has already ruled that plaintiff has stated a viable claim for defamation, and this "decision should continue to govern in subsequent stages of [this] case." Manley, 2007 U.S. Dist. LEXIS 88000 at * 9. Moreover, Judge Sifton's ruling is well-supported by Second Circuit case law. See, e.g., Geisler v. Petrocelli, 616 F.2d 636, 640 (2d Cir 1980) ("The mode of pleading defamation is governed by Rule 8 Fed. R. Civ.P. which requires only that plaintiff's charges be set forth in a short and concise statement, detailed only to the extent necessary to enable defendant to respond and raise the defense of res judicata if appropriate."). See also Pirre v. Printing Developments, Inc., 432 F. Supp. 840 (S.D.N.Y. 1977) ("Once the defendant has sufficient notice of the nature of the communications complained of it is the function of the jury rather than of rigidly applied pleading rules to ascribe weight to the inexactness of such Amended Complaints.") Accordingly, Jet Blue's motion to dismiss plaintiff's defamation and IIED claims must be denied.[3]

---

*comparable*.") (emphasis supplied)

[3]Judge Sifton declined to exercise supplemental jurisdiction over these claims because plaintiff had failed to allege complete diversity amongst the parties. (Amended Order at 14).

-12-

**B.** **Plaintiff Has Stated A Viable False Arrest Claim Under New York State Law.**

Under New York law, an action for false arrest against a private individual "will lie where the defendants lacked reasonable cause for their belief in the plaintiff's culpability." Rivers v. Towers, Perrin Forster & Crosby, Inc., et al., No.07 Civ.5441,2009 U.S. Dist. LEXIS 26301, *11 (E.D.N.Y March 27, 2009) (internal citations omitted).   Thus, "[i]f a victim makes false statements to the police, with the intent to have an innocent person arrested in violation of his Fourth Amendment rights, she may not only be held accountable for false imprisonment under state law, but under federal law, for invoking the state's power to intentionally violate a citizen's constitutional rights." Weintraub v. Board of Educ. of City of New York, 423 F. Supp. 2d 38, 56 (E.D.N.Y 2006). See also Amended Order at 21 ("A defendant is liable for false arrest if, with the intent to have the plaintiff arrested, he makes false statements to the police and instigates an arrest."), (citing Weintraub, 423 F.Supp.2d at 56;  Russell v. Crossland Sav. Bank, 11 F.3d 251, 2257 (2d Cir. 1997)).

In this case, plaintiff has alleged that defendants falsely accused her of making a bomb threat at JFK airport, when they *knew* that no such a threat had never been made, and that plaintiff was arrested as a result of this false accusation.  (Am. Compl.  ¶¶ 40-47) . Further, plaintiff has alleged that both defendants intended to have plaintiff arrested on these false charges. (Am. Compl.  ¶¶ 58, 70). Under New York law, such allegations are more than sufficient to state a claim for false arrest against both JetBlue and its employee, defendant Malabet.  See Gotbetter v. Port Authority of New York and New Jersey, No.98 Civ.6762, 2000

───────────────

Now that plaintiff has properly alleged diversity, there is no basis for dismissing plaintiff's state law claims against JetBlue.

U.S. Dist. LEXIS 3838, * 11-12 (S.D.N.Y. March 28, 2000) ("One who wrongfully accuses

another of criminal conduct and induces or procures that person's arrest may be liable for false

arrest."), (quoting Dunn v. City of Syracuse, 83 A.D.2d 783, 783 (4th Dep't1981)).  Accord

Curley v. Amr Corp., 153 F.3d 5, 13 (2d Cir. 1998).

 Notwithstanding the above case law, however, JetBlue still argues that it cannot be held

liable for false arrest, because it was not directly involved with plaintiff's interrogation and

arrest. (Def. Mem. at 28). Yet, "[c]ontrary to defendants' argument, even where there is no claim

that a defendant actually restrained or confined a plaintiff, a claim of false arrest or false

imprisonment may lie where a plaintiff can show that ... defendants instigated his arrest, thereby

making the police ... agents in accomplishing their intent to confine plaintiff." Weintraub, 423 F.

Supp.  2d at 56 (quoting Carrington v. City of New York, 201 A.D.2d , 525, 526-7 (2d Dept.

1994)). See also Grinnell v.  Weston, 95 A.D. 454, 459 (1st Dept. 1904) ( "[t]he fact that the

officer acting under the information given to him by the individual is the one who takes the

physical possession of the person arrested does *not* relieve the private individual of

responsibility. Both the individual and the officer united in the act and are both responsible for

the arrest if [it is] unlawful") (emphasis supplied).  Indeed, "it would certainly be a strange result

if a person at whose instigation another was arrested could escape responsibility for a false arrest

and detention by showing that he had induced a police officer to believe a false statement of

another's connection with a crime ...." Grinnell, 95 A.D. at 459. See also Amended Order at 22,

n. 17 ("The defendant need not have made the arrest itself, as long as it 'instigated the arrest.'")

 Accordingly, defendant's motion to dismiss plaintiff's false arrest claim must be denied.

i.   **Judge Sifton Has Already Rejected JetBlue's "Civilian Complaint" Argument.**

In moving to dismiss plaintiff's false arrest claim, JetBlue also "renews" its argument

that it merely furnished a "civilian complaint" to law enforcement officials, and therefore cannot

be held responsible for plaintiff's arrest (Def. Mem. at 27). However, Judge Sifton specifically

rejected this same argument:

> Jetblue additionally argues that it merely provided information to the TSA, and
> that plaintiff was arrested following an independent investigation. However, ....
> *contrary to defendant Jetblue's claims, it did not simply report plaintiff to police.*
> Plaintiff alleges that a Jetblue security officer located her in the airport and
> ordered her to accompany him to the security office, *thereby playing a direct role
> in plaintiff's detention and arrest.*

Amended Order at 22, n. 17 (emphasis supplied).

Thus, while JetBlue may wish to "renew" its argument that plaintiff has stated merely a

non-actionable "civilian complaint", this argument has already been heard – and rejected – by

Judge Sifton, and this is now law of the case.[4]

ii.   **Judge Sifton Has Already Rejected Defendant's "Guilty Plea" Argument.**

In its original motion to dismiss, JetBlue argued extensively that plaintiff's guilty plea to

marijuana possession precluded her from bringing both her false arrest claim and malicious

prosecution claims. (Docket # 10, at 7-9). While Judge Sifton agreed that plaintiff's guilty plea

did, in fact, preclude plaintiff's malicious prosecution claim (Amended Order at 16), he rejected

JetBlue's argument that the guilty plea foreclosed plaintiff's false arrest claim. (Amended Order

---

[4]In any event, if defendant JetBlue wanted to "renew"its argument that plaintiff had stated
a non-actionable "civilian complaint", then it should have filed a motion for reconsideration of
Judge Sifton's decision, dated August 3, 2009, which specifically granted plaintiff leave to file a
claim for false arrest. (Amended Order at 22).

at 21)   ("the favorable termination of the proceedings is *not* an element of this tort."), (quoting

Singer v. Fulton, 63 F. 3d 110, 118 (2d Cir. 1995)) (emphasis supplied). Accordingly, Judge

Sifton ruled that plaintiff could, in fact, state a viable claim for false arrest:

> [I]f plaintiff were to plausibly allege that defendants intended to procure her
> arrest, she would successfully state a claim for false arrest, as she has alleged that
> defendants forcefully escorted her to TSA and repeated false statements regarding
> an alleged bomb threat

Amended Order at 21-22.

Thus, Judge Sifton rejected JetBlue's argument that plaintiff's guilty plea for marijuana

possession – a completely unrelated charge – precluded her from bringing a false arrest claim for

the bomb threat charge. This ruling is entirely consistent with Second Circuit authority on this

issue, as discussed further below.

### iii.   Plaintiff's Guilty Plea Does Not Bar Her  False Arrest Claim, Since There Was  Never An  "Adjudication" of The Bomb Threat Charges.

Under the law of this Circuit, "a guilty plea in no way bars a Section 1983 claim under

principles of collateral estoppel, waiver or mootness, where the alleged constitutional violations

were not necessarily answered by the admission." Powers v. Coe, 728 F.2d 97, 102 (2d Cir.

1984), (citing Haring v. Prosise, 103 S.Ct. 2368, 2376 (1983)).  This is so because "when a court

accepts a defendant's guilty plea, there is *no adjudication whatsoever* of any issues that may

subsequently be the basis of a § 1983 claim." Haring, 103 S.Ct. at 2377-78, n.11 (emphasis

supplied). See also Wallace v. Dillon, 921 F. Supp.  946, 952 (E.D.N.Y 1996) (courts must

"look beyond the mere presence of a conviction by verdict or guilty plea and assess whether there

is the *identity of the issue* which has necessarily been decided in the prior a Action.") (emphasis

supplied);  East Coast Novelty Co., Inc., v. City of New York, 781 F. Supp.  999, 1005

-16-

negligent operation of a car.  Thereafter, plaintiff brought suit for false arrest, and defendants

moved to dismiss on the ground that plaintiff's guilty plea precluded his false arrest claim. The

Second Circuit, however, rejected this argument:

> Although there eventually was a final judgment in the criminal proceeding against
> [plaintiff], that judgment did *not* decide the issue of whether or not [defendant] had
> probable cause to arrest [plaintiff] for DWI.  The DWI charge was changed by the
> state to one of negligent operation ... and [therefore] negligent operation, *not* DWI,
> is the charge that was resolved by the final judgment....in sum, there was no final
> judgment that decided the question of probable cause to believe that [plaintiff] had
> driven while under the influence of alcohol.

Kent, 312 F.3d at 574 (emphasis supplied).

Thus, the Second Circuit in Kent expressly held that a plaintiff's guilty plea to an

unrelated criminal charge does *not* bar a false arrest claim for the original (and more serious)

criminal charge.[6]

The rationale of Kent applies with equal force here.  While plaintiff eventually accepted a

guilty plea, this was for a completely *unrelated* charge – namely, possession of "a small quantity

of marijuana" (Amended Order at 6) –  and thus, there was never an adjudication of plaintiff's

guilt on the bomb threat charge. See Id. ("The bomb threat charge was never adjudicated."). Since

the merits of the bomb threat charge against plaintiff were never addressed, "the alleged

constitutional violations were not necessarily answered by the admission." Powers v. Coe, 728

F.2d 97, 102 (2d Cir. 1984).   Accordingly, defendants' motion to dismiss plaintiff's false arrest

claim must be denied.

---

[6]JetBlue wholly fails to acknowledge – much less distinguish –  Kent in its motion to
dismiss, instead relying upon cases which all predate Kent (Def. Mem. at 29-30).

### iv. JetBlue's Role In Facilitating Plaintiff's Arrest Is Sufficient To Establish Intent.

JetBlue argues that plaintiff has not plausibly alleged "intent" within the meaning of

Twombly (Def. Memo at 28). Yet, as this Court has observed, the "Supreme Court's decision in

Twombly ..... does *not* "mandate a 'universal standard of heightened fact pleading.'" Hutchinson

v. Britsh Airways, No. 08 Civ. 2781 (NGG), 2009 U.S. Dist. LEXIS 2881, * 7 (E.D.N.Y. April 9,

2009) (emphasis supplied) (quoting Iqbal v. Hasty, 490 F.3d. 143, 157-58 (2d. Cir. 2007)).

Rather, the complaint "need only meet the requirements of our simplified notice pleading

standard [which] relies on liberal discovery rules and summary judgment motions to define

disputed facts and issues and to dispose of unmeritorious claims," Courtenay Communications

Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003). In other words, the complaint need "only enough

facts to state a claim to relief that is *plausible on its face*." Twombly, 127 S.Ct. at 1974 (emphasis

supplied).

Viewed in this context – and not through the distorted prism of JetBlue's heightened (Rule

9(b)) pleading requirements – there can be no doubt that plaintiff has sufficiently alleged that

JetBlue intended for plaintiff to be arrested:

> [D]efendant JET BLUE *facilitated the arrest of Ms. Baez by transporting her,
> against her will, into the custody of state and/or federal law enforcement officials
> at the airport.* In placing Ms. Baez into the custody of state and/or federal law
> enforcement officials at the airport, defendant JET BLUE *intended for plaintiff
> ROSALINDA BAEZ to be arrested by said state and/or federal law enforcement*
> officials. In so doing, defendant JET BLUE *knew that plaintiff ROSALINDA BAEZ
> would, in fact, be arrested by these state and/or federal law enforcement officials.*

Am. Compl., ¶¶ 69-71 (emphasis supplied).

These allegations are more than sufficient to establish that JetBlue "intended" to have

-19-

plaintiff arrested.[7] Accordingly, JetBlue's motion to dismiss plaintiff's false arrest claim must be denied.

## III.   JET BLUE MAY BE SUED DIRECTLY UNDER NEW YORK STATE LAW FOR NEGLIGENT HIRING, TRAINING AND SUPERVISION OF DEFENDANT MALABET.

Even assuming, arguendo, that JetBlue could not be held vicariously liable for the actions

of Ms. Malabet,  this *still* would not warrant dismissal of plaintiff's Amended Complaint.  This is

so because,  under New York law, even "in instances where an employer cannot be held

vicariously liable for its employee's torts, the employer can *still* be held liable under theories of

negligent hiring, negligent retention and negligent supervision." Bouchard v. New York

Archdiocese, No. 04 Civ. 9978, 2006 U.S. Dist. LEXIS 31393, * 13 (S.D.N.Y. 2006), (citing

Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D2d. 159, 161 (2d Dep't 1997))

(emphasis supplied).  Thus, even if Ms. Malabet's actions *were* outside the scope of her

---

[7]In any event, plaintiff has alleged *more* than just that JetBlue "intended" to have plaintiff arrested – plaintiff has alleged that JetBlue itself "unlawfully seized" plaintiff , "restrain[ed] her freedom of movement," and subjected her to a *"de facto* arrest", such that she "did not believe that she was free to leave." (Am. Compl., ¶¶ 64-66; 68).  Given these allegations, JetBlue *directly violated* plaintiff's Fourth Amendment rights by subjecting her to an unlawful seizure. See  Florida v. Bostick, 501 U.S. 429, 434 (1991) (seizure occurs where by "means of physical force *or show of authority*" defendant's liberty is "restrained", such that a "a reasonable person would [not] feel free to decline the officers' requests or otherwise terminate the encounter ...") (emphasis supplied); United States v. Mendenhall, 446 U.S. 544, 554 (1980)  (seizure occurs when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." ).   While JetBlue may dispute the nature of this encounter – arguing that it was merely a Terry stop –  the issue of whether or not an investigatory stop ripened into a *de facto* arrest is a question of fact. See, e.g., United States v. Tehrani, 49 F.3d 54, 57 (2d Cir. 1995) ("at what point a permissible investigative detention ripens into an arrest is a question of fact."); Oliveira v. Mayer, 23 F.3d 642, 645 (2d Cir. 1994) ("In a Section 1983 action, it would usually be a jury's task to decide whether a detention amounted to a *de facto* arrest");Posr v. Doherty, 944 F.2d 91, 98 (2d Cir. 1991) ("the issue of precisely when an arrest takes place is a question of fact.").

employment, JetBlue *still* could be held liable under a theory of negligent hiring, training and supervision. (Id.).

In recognition of this principle, Judge Sifton granted plaintiff leave to replead her negligence claim, stating that "if plaintiff plausibly alleges facts indicating that defendant Jetblue knew or should have known of [Malabet's] propensity for retaliating against customers for making complaints, or that there were deficiencies in employee training that caused the harm, such that Jetblue could be said to have been deliberately indifferent to the risk of false accusations against passengers, amendment to her negligence claim would not be futile." (Amended Order at 23.)

In her Amended Complaint, plaintiff has made detailed factual allegations which fall squarely within the legal framework set forth by Judge Sifton.[8]  Specifically, plaintiff has alleged, inter alia, that "this was not the first time that defendant [Malabet] had made a false allegation against a passenger in retaliation for filing a complaint", that defendant JetBlue "knew, or in the exercise of reasonable care, should have known, that defendant [Malabet] had a propensity for retaliating against customers who made complaints against her", that defendant JetBlue "knew, or in the exercise of reasonable care, should have known, that defendant [Malabet] had a propensity for engaging in grossly improper, inappropriate and offensive conduct towards passengers, and then concealing such misconduct by making false accusations against such passengers," that JetBlue "failed to make reasonable inquiries into the background of defendant [Malabet] and in

---

[8]Amazingly, JetBlue takes issue with plaintiff's decision to adhere to Judge Sifton's guidelines, complaining that "Plaintiff's Amended Complaint takes the roadmap provided by the Court's Amended Memorandum and Order." (Def. Mem. at 11).  Needless to say, if plaintiff had *not* taken the "roadmap" provided by the Court, JetBlue would undoubtedly have argued that *this* was a basis for dismissal.

particular, into her fitness as a ticket agent dealing directly with the public", and that had Jet Blue

"used reasonable care in inquiring into the background of defendant [Malabet] it would have

learned  that Ms. Malabet was patently unqualified for this position, and it would not have hired

Ms. Malabet." (Am. Compl.¶¶ 96-98, 100-103).   Without question, these allegations are

sufficient to state a claim for negligent hiring under New York State law. See  Kenneth R. v.

Roman Catholic Diocese of Brooklyn, 229 A.D2d. 159, 161 (2d Dep't 1997).[9]  Accordingly,

JetBlue's motion to dismiss this claim must be denied.

## IV.   JETBLUE IS NOT ENTITLED TO IMMUNITY UNDER FEDERAL STATUTE.

### A.   There is No Immunity For Statements Which Are  "False, Inaccurate or Misleading."

Jet Blue concedes – as it must – that it is not entitled to immunity for disclosures "made

with actual knowledge the disclosure was false, inaccurate or misleading" or "made with reckless

disregard as to the truth or falsity of that disclosure." 49 U.S.C.S. § 44941(b). (Def. Mem. at 17).

Nonetheless, JetBlue *still* claims that it is entitled to immunity as a matter of law. (Id.) However,

if plaintiff's allegations are accepted as true, then JetBlue *must* have known that defendant

Malabet's "bomb threat" claims were false, given the following: "(1) defendant Tiffany Malabet

allowed plaintiff to re-book another JET BLUE flight immediately after this incident ; (2)

defendant Tiffany Malabet allowed Flight 1061 to take off without having plaintiff's baggage

searched, despite the fact that the plane had remained at Gate 18 for *thirty minutes* after plaintiff's

alleged bomb threat was supposedly made; (3)  defendant Tiffany Malabet did not contact TSA

---

[9]Plaintiff has also alleged that JetBlue was negligent in its training and supervision of
defendant Malabet. (Am. Compl. ¶¶ 107-116).  This claim is also viable under New York State
law. Kenneth R., 229 A.D2d. at 161.

officials at the time the comment was allegedly made, and in fact, did not say anything about

plaintiff's statements until *after* she was confronted about plaintiff's e-mail complaint to JET

BLUE; and (4) defendant Tiffany Malabet allowed plaintiff to remain free at JFK airport for

several hours without contacting any law enforcement officials and/or supervisors at JET BLUE."

(Am. Compl. ¶ 44; Ex. B).   Given these allegations, JetBlue – *at a minimum* – acted with a

"reckless disregard as to the truth or falsity" of Malabet's claims.   Therefore, under 49 U.S.C.S. §

44941(b), JetBlue is *not* entitled to immunity for reporting Ms. Baez's alleged bomb threat to law

enforcement officials. See Shqeirat v. U.S. Airways Corpp., Inc., 515 F. Supp. 2d 984, 1000 (D.

Minn. 2007) ("plaintiff's false arrest claim alleges conduct by U.S. Airways that falls outside the

protection of 49 U.S. C. § 44941(a)"); Bayaa v. The American-Arab Anti-Discrimination

Committee, 249 F. Supp. 2d 1198, 1205 (C. D. Cal. 2002) (rejecting defendants' argument that

immunity under 49 U.S. C. § 44941(a) bars plaintiff's civil rights claims under 42 U.S. C. §

1983).[10]

## V.   PLAINTIFF'S STATE LAW CLAIMS ARE NOT EXPRESSLY PREEMPTED BY FEDERAL LAW.

### A.   There Is a Strong Presumption Against Federal Preemption.

The Supreme Court has stated that a finding of preemption will be justified only upon a

showing that such result is the "*clear and manifest purpose* of Congress" Cippollone v. Liggett

---

[10] To the extent that JetBlue suggests that it is entitled to immunity because Ms. Malabet was not acting "within the scope" of her employment – see Def. Mem. at 18 – this raises a *factual question* which cannot be resolved on a motion to dismiss. See Rowley, 2005 U.S. Dist. LEXIS 22241, at * 36 ("Normally the question of whether a defendant employee was acting within the scope of his or her employment *depends heavily on the facts and circumstances of the particular case*, and thus is appropriate for a jury.") (emphasis supplied); Stanley, 894 F. Supp. at 641 ("New York case law states that the scope of employment issue is a *question of fact, not law*.")(internal quotations and citations omitted)(emphasis supplied).

Group, Inc., 505 U.S. 504, 516 (1992) (internal citation omitted) (emphasis supplied).

Accordingly, to avoid "unintended encroachment on the authority of the states, ... courts

interpreting a federal statute pertaining to a subject traditionally governed by state law will be

reluctant to find preemption." CSX Transportation, Inc., v. Easterwood, 507 U.S. 658, 664

(1993).

In the context of air carriers, the Supreme Court has expressly cautioned against finding

preemption where the state law's impact on an air carrier's services is "tenuous, remote or

peripheral." Shaw v. Delta Airlines, Inc., 463 U.S. 85, 100 n. 21 (1983). Indeed, preemption

"cannot be construed in a way that insulates air carriers from liability for injuries caused by

outrageous conduct that goes beyond the scope of normal aircraft operations." Rombom v. United

Airlines, Inc., 867 F. Supp. 214, 222 (S.D.N.Y. 1994). Instead, the courts should "tread

cautiously" in the area of preemption, and "even federal statutes that contain express preemption

clauses must be viewed through the prism of this assumption." Greenwood Trust v.

Massachusetts, 971 F.2d. 818, 823 (1st Cir. 1992).

**B.      Courts in This Circuit Have Almost Uniformly Ruled Against Preemption.**

Applying the above principles, federal courts in this Circuit have almost uniformly ruled

against preemption.  See, e.g., Trinidad v. American Airlines, Inc., 932 F. Supp. 521, 535

(S.D.N.Y. 1996) ("district courts in this Circuit have spoken several times on this issue, *almost*

*always* ruling against preemption.") (emphasis supplied); Pitman v. Grayson, 869 F. Supp. 1065,

1072 (S.D.N.Y. 1994) ("actions in which plaintiffs invoke traditional elements of tort law ...

*overwhelmingly incline* against federal preemption") (emphasis supplied); Stag v. Delta Airlines,

inc., 849 F. Supp. 179, 182 (E.D.N.Y 1994), *rev'd on other ground.* 52 F.3d 463 (1995) ("the

-24-

courts have almost uniformly resolved against federal preemption."); <u>Kings Choice Neckwear, Inc. v. DHL Airways, Inc.</u>, No.02 Civ.9580, 2003 U.S. Dist. LEXIS 17507, * 8 (S.D.N.Y. Oct. 1, 2003) ("Neither Congress nor the Supreme Court has declared that the ADA completely preempts state law."); <u>Lanza v. American Airlines, Inc.</u>, No. 93 Civ.4246, 1996 U.S. Dist. LEXIS 22275, *17 (E.D.N.Y May 23, 1996) ("several Eastern District cases have concluded that the ADA does *not* preempt common law state tort actions.") (emphasis supplied). In fact, this very Court reached a similar conclusion. <u>See</u> <u>Goonewardena v. AMR Corp.</u>, No. 08 Civ. 4141 (NGG), 2008 U.S. Dist. LEXIS 96013, * 7 (E.D.N.Y. November 25, 2008) (rejecting preemption argument for both the Federal Aviation Act and the Airline Deregulation Act, since neither statute provided plaintiffs with a private right of action: "in the situations where the Supreme Court has found complete preemption, it did so because the federal statute at issue was the exclusive remedy for the plaintiff.").[11]

### C. Plaintiff's Claims Have Nothing Whatsoever To Do With The Provision of "Services".

Notwithstanding the above cases, JetBlue still asserts that preemption is appropriate because all of "Plaintiff's state law claims relate to the 'services' provided by JetBlue." (Def. Mem. at 26). This blanket assertion, however, is patently untrue. In actuality, plaintiff's claims have *nothing* whatsoever to do with the provision of "services" by JetBlue. To the contrary, plaintiff has alleged that the subject incident: (1) took place "several hours later", i.e., long after plaintiff had spoken with the JetBlue gate agent (Am. Compl. ¶ 39); (2) while plaintiff was

---

[11]Despite the fact that district courts in this Circuit have "almost uniformly resolved against federal preemption," <u>Von Hundertmark</u> 1996 U.S. Dist. LEXIS 20231, * 16, JetBlue has failed to acknowledge – much less distinguish – any of these cases.

waiting in "the Wi-Fi area in the airport", i.e., *not* at the gate or on a JetBlue aircraft; at which time defendants (Id. ¶ 46); (3) "maliciously and deliberately lied about" plaintiff making a bomb threat  (Id ¶ 45); and that as a result of such lies, (4) plaintiff was "unlawfully detained and interrogated for approximately five hours by  law enforcement officials", and was then "charged with violating 49 U.S. C. § 46507 for making a false bomb threat." (Id. ¶¶ 47-48; ¶¶ 50-51)

In light of these allegations – which must be accepted as true – it is clear that none of the claims made by plaintiff even *remotely* involve a "service" provided by JetBlue.  See Von Hundertmark v. Boston Professional Hockey Assoc., Inc., No. 93 Civ. 1369, 1996  U.S.  Dist. LEXIS 20231, * 16 (E.D.N.Y March 7, 1996) ("Preempted 'services' typically address the provisions of the *quid pro quo* for passenger's fare like 'ancillary charges for headsets, alcoholic beverages, and excess baggage'"). To the contrary, plaintiff's allegations implicate "traditional elements of tort law ... [which] the courts have "uniformly resolved against federal preemption"" (Id.), (quoting Stag v. Delta Airlines, Inc., 849 F. Supp.  179, 182 (E.D.N.Y 1994), *rev'd on other grounds*, 52 F.3d 463 (1995)). "This more restrained application of the preempted services leaves open some judicial recourse for passengers injured by illegal conduct and is consistent with the principle that federal courts should not displace state police powers by federal law unless that was the "clear and manifest purpose of Congress," Von Hundertmark, 1996  U.S.  Dist. LEXIS 20231 at * 16 (quoting California v. Arc America Corp., 490  U.S.  93, 102 (1989)).

**D.**     **Preemption is Particularly Unwarranted For State Tort Claims Such As False Arrest And False Imprisonment.**

In this case, plaintiff is alleging intentional torts which "represent the civil offspring of criminal behavior", including false arrest and false imprisonment.  Pittman, 869 F. Supp. at 1074. Courts in this jurisdiction have repeatedly held that such state law claims are *not* preempted by

-26-

federal law. See,.e.g, Peterson v. Continental Airlines, Inc., 970 F. Supp. 246, 251 (S.D.N.Y. 2002) (finding no preemption where plaintiff alleged claims of false arrest, false imprisonment, assault and battery, defamation and negligence claims arising from seating conflict); Pittman, 869 F. Supp. at 1072-73 (finding no preemption where plaintiff alleged false imprisonment and intentional infliction of emotional distress); Curley v. American Airlines, Inc., 846 F. Supp.  280, 284 (S.D.N.Y. 1994) (finding no preemption where plaintiff alleged false imprisonment and negligence); Sedigh v. Delta Airlines, Inc., 850 F. Supp. 197, 200 (E.D.N.Y 1994) (finding no preemption where plaintiff alleged false imprisonment and intentional infliction of emotional distress arising out of captain's alleged verbal and physical abuse of passenger.)

**E.     Judge Sifton Rejected JetBlue's Preemption Argument.**

While Judge Sifton did not *expressly* reject defendant's preemption argument, he did implicitly reject this argument by granting plaintiff leave to file five separate claims against JetBlue under state and federal law. (Amended Order at 14).  Further, Judge Sifton strongly indicated that he would  reject JetBlue's various preemption and immunity arguments if he were called upon to decide such arguments again in the future.  See Amended Order at 14, n. 5 ("I note that 'nothing in [these] statutes authorizes an air carrier to take any action, such as having a passenger arrested out of spite or maliciousness, where the arrest was not necessary to the provision of a service,' such as safety"), (quoting Rombom v. United Air Lines, 867 F. Supp. 214, 225 (S.D.N.Y. 2004)).  Accordingly, it it is clear that Judge Sifton did not consider JetBlue's preemption and/or immunity arguments as a bar to any of plaintiff's claims.

-27-

## VI.   PLAINTIFF'S STATE LAW CLAIMS ARE NOT IMPLIEDLY PREEMPTED BY FEDERAL LAW.

### A.   Courts Will Not Imply Preemption When There Is Already An  Express Preemption Clause Contained In The Statute.

"The Supreme Court has instructed that there is no need to infer congressional intent to preempt state laws when Congress included an express preemption clause in the legislation that a litigant's implied preemption argument relies upon." Lanza v. American Airlines, Inc., No. 93 Civ.4246, 1996 U.S. Dist. LEXIS 22275, * 30 (E.D.N.Y 1996 May 23, 1996), (citing Rombom, 867 F. Supp. 214, 225). See also Trinidad v. American Airlines, Inc., 932 F. Supp.  521, 526 (S.D.N.Y. 1996) ("When Congress has included an express preemption clause in the same statute that is argued to implicitly preempt state law, courts need *not* infer congressional intent to preempt.") (emphasis supplied).  Indeed,  "Courts should be reluctant to infer preemption in such cases because 'Congress' enactment of a provision defining the preemptive reach of a statute implies that matters beyond that reach are not preempted.'" Trinidad, 932 F. Supp. at 526 (quoting Cipollone, 505 U.S.  at 517). Thus, since the statute at issue already contains an express preemption clause, there is no need for this Court to infer implied preemption. Accordingly, this Court should reject defendants' arguments that plaintiff's claims are impliedly preempted.

### B.   Congress' Failure to Repeal The "Savings Clause" Further Militates Against Finding Implied Preemption.

Another factor which weighs against  finding implied preemption is that Congress failed to repeal the "savings clause"[12] when it amended the previous legislation and added section 1305.

---

[12]The "savings clause" provides as follows: "nothing ... in this chapter shall in any way abridge or alter the remedies now existing at common law or by statute, but such provisions of this chapter are in addition to such remedies." 49 U.S. C. § 1506.

Indeed, as Judge Sifton once noted, the "legislation amending the [ADA] conspicuously declined to repeal" the savings clause from the previous legislation.  <u>Von Hundertmark v. Boston Professional Hockey Assoc. Inc.</u>, No. 93 Civ. 1369, 1996 U.S. Dist. LEXIS 20231, * 19 (E.D.N.Y March 7, 1996). This decision to retain the savings clause thus "shows that Congress did *not* intend to occupy the field of airplane safety to the exclusion of ... state common law." <u>Cleveland v. Piper Aircraft Corp.</u>, 985 F. 2d. 143, 1442 (10th Cir. 1993). Accordingly, the Court should find that  plaintiff's state law claims are *not* impliedly preempted.

### C.  A Finding Of Implied Preemption Would Leave Passengers With No Remedy For Tort Claims.

If the Court were to adopt JetBlue's position – and find that plaintiff's state law claims are impliedly preempted – then airline passengers would have no legal recourse for tort claims suffered at the hands of airlines and/or their employees.  This is so because "Congress failed to provide any such mechanism for resolution of tort claims" in its legislation. <u>Lanza v. American Airlines. Inc.</u>, No. 93 Civ.4246, 1996 U.S. Dist. LEXIS 22275, * 30 (E.D.N.Y  May 23, 1996). Therefore, if such claims were impliedly preempted, "passengers who have tort claims against an airline would be left with virtually no remedy" <u>Lanza</u>, 1996 U.S. Dist. LEXIS 22275, at 30 (E.D.N.Y 1996 May 23, 1996), (citing <u>Rombom v. United Airlines</u>, 867 F. Supp. 214, 221 (S.D.N.Y. 1994)).  But "it is inconceivable that Congress would have intended section 1305(a)(1) ... to act as a grant of total immunity to the airlines from any and all service-related" torts. <u>Kay v. Usair, Inc., CCair, Inc.</u>, 93 Civ. 9856, 1994 U.S. Dist. LEXIS 10662, * 6 (E.D.PA. July 28, 1994) Indeed, "the ADA is not intended to be a safe harbor for airlines from civil prosecution for the civil analogues of criminal offenses." <u>Peterson v. Continental Airlines. Inc.</u>, 970 F. Supp. 246, 251 n4, (S.D.N.Y. 2002), nor for that matter, is it "intended to be an insurance policy for air carriers

-29-

against their own negligence." Margolis v. United Airlines, Inc., 811 F. Supp.  318, 323-24 (E.D. Mich. 1993).  Accordingly, the Court should reject defendant's argument that plaintiff's state law tort claims are impliedly preempted.

## VII.  PLAINTIFF HAS STATED A VIABLE FALSE ARREST CLAIM AGAINST JET BLUE UNDER FEDERAL LAW.

### A.  Private Parties May Be Held Liable Under 42 U.S. C. § 1983.

JetBlue argues that it cannot be held liable for violation of plaintiff's constitutional rights because "only 'state actors' are proper targets of constitutional claims." (Def. Mem. at 7). However, it is well-established that private actors *can* be held liable under Section 1983 when they jointly participate with a state actor in violation of plaintiff's constitutional rights. See, e.g., Adickes v. S.h. Kress & co., 398 U.S.  144, 152 (1970) ( "To act 'under color' of law does *not* require that the accused be an officer of the state.  It is enough that he is a willing participant in joint activity with the state or its agents"), (quoting United States v. Price, 383 U.S.  787 at 794 (1966)) (emphasis supplied); Coakley v. Jaffe, 49 F. Supp.  2d 615, 624 (S.D.N.Y. 1999) ("private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for purpose of § 1983, even if the state actor himself is immune from liability."); Weintraub v. Board of Educ. of City of New York, 423 F. Supp.  2d 38, 57 (E.D.N.Y 2006) ( "private parties may be liable for violation of § 1983 where they ma[ke] false allegations to a city agency that result[] in a deprivation of plaintiff's constitutional rights."),  (citing Friedman v. New York City Administration for Children's Services, et al., 2005 U.S.  Dist. LEXIS 42414, * 11 (E.D.N.Y 2005) (same).  As demonstrated below, JetBlue was a "willing participant in joint activity with the state", Adickes, 398 U.S. at 152, and therefore, *can* be sued under Section 1983.

-30-

**B.    Jet Blue Actively Participated in Plaintiff's Arrest and Thus Acted Under "Color of State Law."**

While JetBlue claims that it did nothing more than provide "false information regarding Plaintiff to law enforcement officials" (Def. Mem. at 9), this is *not* plaintiff's only allegation against JetBlue.   As Judge Sifton noted: "Contrary to defendant JetBlue's claims, it did *not simply report plaintiff to police*.  Plaintiff alleges that a JetBlue security officer located her in the airport and ordered her to accompany him to the security office, thereby playing a *direct role in plaintiff's detention and arrest*.") (emphasis supplied).  (Amended Order at 22, n. 17 ).  Thus, "[i]n this case, plaintiff has alleged that Jet Blue was an *active participant* in turning plaintiff over to TSA authorities with a report that she had made a violent threat, thereby *effecting her confinement and arrest*, and that Jet Blue did so *knowing that the information was false*." (Ibid.) (emphasis supplied).

Given these allegations – which must be accepted as true – plaintiff has sufficiently alleged facts to establish that JetBlue was acting under 'color of state law', as it undoubtedly *was* a "willing participant in joint activity with the state or its agents" when it took plaintiff into custody and brought her to TSA officials at the airport.  See Adickes, 398 U.S.  at 152.  See also Granger v. Harris, No.05 Civ.3607, 2007 U.S. Dist. LEXIS 30076, *29 (E.D.N.Y 2007)(rejecting private defendant's argument that it was not acting under 'color of state law'; "plaintiff's Amended Complaint  raises sufficient factual issues under the "state compulsion" theory to withstand dismissal at the pleadings stage."); Mayers v. New York Community Bancorp., Inc., No.03 Civ 5837, 2005 U.S.  Dist. LEXIS 20279, *26-7 (E.D.N.Y Aug. 31, 2005) ("applying the generous standard of review required on a motion to dismiss, I find that plaintiffs have alleged facts sufficient to permit the inference that the bank defendants were acting under color of state

-31-

law."); Weintraub v. Board of Educ. of City of New York, 423 F. Supp. 2d 38, 56 (E.D.N.Y 2006) ("[i]f a victim makes false statements to the police, with the intent to have an innocent person arrested in violation of his Fourth Amendment rights, she may not only be held accountable for false imprisonment under state law, but *under federal law, for invoking the state's power to intentionally violate a citizen's constitutional rights*.") (emphasis supplied).[13]

Accordingly, JetBlue's claim that it cannot be held liable under Section 1983 should be rejected.

### C.   Plaintiff Has Sufficiently Alleged "Personal Responsibility" On The Part of JetBlue.

In her Amended Complaint, plaintiff has specifically alleged that JetBlue was *directly involved* in the violation of her Fourth Amendment rights. (Am. Compl. ¶¶ 46, 62-74). See also Amended Order at 22, n. 17 (plaintiff alleges that JetBlue "play[ed] a direct role in plaintiff's detention and arrest."). Further, plaintiff has alleged that JetBlue violated plaintiff's constitutional rights under Section 1983 by: (1) failing to properly train defendant Malabet (Am. Compl. ¶¶ 107-116; 137-144); (2) failing to properly supervise defendant Malabet (Am. Compl. ¶¶ 107-116); and (3) adopting an unlawful custom, policy, or practice of arresting passengers without probable cause. (Am. Compl. ¶¶ 107-116). These allegations are more than sufficient to state a viable 1983 claim against JetBlue under both federal and state law. See Rojas v. Alexander's Department Store, 924 F.2d 406, 408 ( 2d Cir. 1991); Bouchard v. New York Archdiocese, 2006 U.S. Dist. LEXIS 31393, * 13 (S.D.N.Y. 2006); Carter v. Port. Auth. Of N.Y. & N.J., No. 03 Civ. 8751, 2004 U.S.Dist. LEXIS 25633, *16 (S.D.N.Y. December 20, 2004);

---

[13] To the extent that JetBlue relies upon Chodkowski v. City of New York, 2007 U.S. Dist. LEXIS 67822, * 28-29, (S.D.N.Y. Sept. 12, 2007) – see Def. Mem. at 8, 10 – such reliance is misplaced. As Judge Sifton noted when discussing Chodkowski: "It is unclear why maliciously causing the arrest of another does not constitute bad faith." (Amended Order at 11).

Adorno v. Corr. Servs. Corp. 312 F. Supp. 2d 505, 518 (S.D.N.Y. 2004); Phillips v. City of New York, 453 F. Supp. 2d 690, 726 (S.D.N.Y. 1996). [14]   Accordingly defendant's motion to dismiss must be denied.

## VIII.   PLAINTIFF HAS STATED A VIABLE FAIR TRIAL CLAIM AGAINST JET BLUE UNDER FEDERAL LAW.

### A.   Heck v. Humphrey Has No Application to this Case, Because Plaintiff Was Not "In the Custody of the State" at the Time The Action Was Commenced.

Defendants erroneously argue that plaintiff's fair trial claim is barred by Heck v. Humphrey, 512 U.S. 477 (1994). (Def. Mem. at 15, 29) . The Second Circuit has expressly held, that the rule of Heck v. Humphrey does *not* apply to plaintiffs who are not in state custody when their actions are commenced. See Leather v. Eyck, 180 F.3d 420, 424 (2d Cir. 1999) ("Because Leather is not and never was in the custody of the State, he, like Jenkins, has no remedy in habeas corpus. Having escaped the jaws of Heck, Leather should therefore be permitted to pursue his § 1983 claim ...."). See also Plonka v. Brown, No. 00 Civ. 7651, 2001 U.S. App. LEXIS 1694 (2d Cir. 2001) ("If [plaintiff] is not in the custody of the State of New York, then Jenkins and Haubert apply to remove his § 1983 from the bar erected by Heck.") (citations omitted); Huang v. Johnson, 251 F. 3d 64, 75 (2d Cir. 2001)("We conclude that Heck does not bar [plaintiff's] Section 1983 action, as [plaintiff] has no habeas remedy because he has long since been released from OCFS custody."). See also  Davis v. Cotov, 214 F. Supp. 2d 310, 316 (E.D.N.Y. 2002) ("Notably, Heck does *not* bar a Section 1983 suit when the plaintiff's sentence has expired because it would be

---

[14] JetBlue's direct violation of plaintiff's constitutional rights is further discussed in several other sections of this brief. See, e.g., Point IX & Point X, infra.  See also Point II(B)(iv) and Point III, supra.  Plaintiff respectfully requests that the Court incorporate by reference these arguments when considering JetBlue's "personal responsibility" argument (Def. Mem. at 10-14).

*impossible, as a matter of law*, for a plaintiff no longer in custody to satisfy the favorable

termination requirement in that he could not file a habeas petition. ") (emphasis supplied).

In this case, it is undisputed that plaintiff Rosalinda Baez was *not* in state custody when

this action was filed.  Therefore, despite JetBlue's claims to the contrary, Heck has *no* application

to her case. See Leather, supra.; Huang, supra. Accordingly, JetBlue's arguments under Heck

should be rejected by this Court.

### B. Forwarding False Evidence to Prosecutors Violates the Accused's Right to a Fair Trial and Is Actionable under 42 U.S.C. § 1983.

The Second Circuit has repeatedly held that when a police officer supplies false

information to a prosecutor, the officer has violated the criminal defendant's right to a fair trial,

and such unlawful conduct gives rise to an action under 42 U.S. C. § 1983.  See Ricciuti v. N.Y.C.

Transit Auth., 124 F.3d 123,130 (2d Cir.  1997) ("When a police officer creates false information

likely to influence a jury's decision and forwards that information to prosecutors, he violates the

accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable

action is redressable in an action for damages under 42 U.S. C. § 1983."); Jocks v. Tavernier, 316

F.3d 128, 138 (2d Cir. 2003) (same).[15]  Further, the Second Circuit has expressly held that such a

"fair trial" claim may be brought *regardless* of whether or not there is probable cause for

---

[15] While a "fair trial" claim is typically brought against police officers, it applies with equal force to non-police defendants as well. See Greene v. Wright, 389 F. Supp. 2d 416, 430 (D. Conn. 2005) ("Though most of these cases involve misconduct by police, a conspiracy by other state actors involved with the justice system to fabricate and suppress evidence in order to effectuate a criminal conviction would similarly work a "corruption of the truth-seeking function of the trial process.""), (quoting Ricciutti v. N.Y.C. Transit Authority, 124 F.3d 123, 130 (2d Cir. 1997)). See also White v. Frank, 855 F.2d 956, 962 (2d Cir. 1988) (equating police officers with civilian witnesses for purpose of a malicious prosecution claim).

plaintiff's arrest:

> Each of the defendants insists that so long as there was probable cause for [plaintiff's] arrest – independent of the allegedly fabricated evidence – the fabrication of evidence is legally irrelevant. In essence, they argue that as long as the arrest complied with the Fourth Amendment, the [plaintiffs] can have no claim for post-arrest fabrication of evidence against them. This argument – an ill-conceived attempt to erect a legal barricade to shield police officials from liability – is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society. *No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee.*

Ricciuti., 124 F.3d at 129-30 (2d Cir. 1997) (emphasis supplied).

In this case, plaintiff has alleged that, as a result of the "blatantly false and misleading claims made by defendants to law enforcement officials", she was "unlawfully detained and interrogated for approximately five hours", and was thereafter falsely charged with making a false bomb threat at JFK airport. (Am. Compl. ¶¶ 47;49-51) Under the law of this Circuit, such a "fair trial" claim is clearly actionable under 42 U.S.C. § 1983. See Taylor v. City of New York, No. 03 Civ. 6477, 2006 U.S. Dist. LEXIS 41429, * 14 (S.D.N.Y. June 19, 2006) ("when an officer gives false information about an arrestee to prosecutors, he violates the arrestee's right to a fair trial."); Henry v. City of New York, No.02 Civ.4824, 2003 U.S. Dist. LEXIS 15699, at * 12 (S.D.N.Y. September 5, 2003) ( "while there is no constitutional right to be free from having evidence fabricated against an individual, the offense rises to a constitutional violation if one is deprived of his liberty because of the fabrication."). See also Greene v. Wright, 389 F. Supp. 2d 416, 430 (D. Conn. 2005) ("[T]o the extent that the second amended Amended Complaint alleges a § 1983 claim against [the non-police] defendants for an alleged conspiracy to fabricate

-35-

and suppress evidence, [plaintiff] has stated a claim for which relief is possible."); Amended

Order at 24 (recognizing viability of plaintiff's fair trial claim against JetBlue: "plaintiff has

alleged that JetBlue corrupted the truth-seeking function of the trial process by initiating a

prosecution against her based on false information and that she was prejudiced as a result.").

Accordingly, JetBlue's motion to dismiss plaintiff's "fair trial" claim must be denied.

## IX.    JET BLUE MAY BE HELD LIABLE UNDER MONELL FOR ITS UNLAWFUL POLICY, CUSTOM OR PRACTICE OF ARRESTING PASSENGERS WITHOUT PROBABLE CAUSE.

In his Amended Memorandum Opinion and Order ("Amended Order"), Judge Sifton

expressly stated that plaintiff could bring a constitutional claim against JetBlue under Monell v.

Department of Social Services of the City of New York, 436 U.S. 658, 690-91 (1978):

> Another means of holding JetBlue liable in this case would be to allege that
> JetBlue had "(1) an official policy or custom that (2) [caused her] to be subjected
> to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397
> (2d Cir. 1983). see also Monell v. Department of Social Services of the City of
> New York, 436 U.S. 658,. 690-91 (1978). This analysis, developed in the context
> of a § 1983 claims against municipalities, provides a means by which to hold an
> entity responsible for the actions of employees that result in the deprivation of
> constitutional rights.

Thus, Judge Sifton recognized – and the Second Circuit has expressly held – that Monell

claims *can* be brought against private employers such as JetBlue. See Rojas v. Alexander's

Department Store, 924 F.2d 406, 409 ( 2d Cir. 1991)  ("Although Monell dealt with municipal

employers, its rationale has been extended to private businesses.") (citing Iskandar v. Village of

Forest Park, 690 F.2d 126, 128-29 (7th Cir. 1982); Powell v. Shopco. Laurel Co., 678 F.2d 504,

506 (4th Cir. 1982); Smith v. Brookshire Brothers, 519 F.2d 93, 94 (5th Cir. 1975)).   While an

employer cannot be held *vicariously* liable for the constitutional torts of its employees, it

nonetheless can be held *directly* liable for the constitutional violations of its employees if such

-36-

employees acted pursuant to an unlawful policy, custom, or practice of their employer. Rojas, 924 F.2d at 408.

"To show [such] a policy, custom, or practice, the plaintiff need *not* identify an express rule or regulation" Patterson v. County of Ofoneida, 375 F.3d 206, 226 (2d Cir. 2004). Accord Kern v. City of Rochester, 93 F.3d. 38, at 44 (2d Cir. 1996) (the "policy or custom need not be memorialized in a specific rule or regulation."). Rather, a "1983 plaintiff may establish a municipality's liability by demonstrating that the actions of subordinate officers are sufficiently widespread to constitute constructive acquiescence of senior policy makers." Sorlucco v. New York City Police Dept. , 971 F.2d 864, 871 (2d Cir. 1992). Thus, "[c]ircumstantial proof, such as evidence that the municipality so failed to  train its employees as to display a deliberate indifference to the constitutional rights within its jurisdiction", can support a finding that such a policy exists.  Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996). See also Villante v. Department of Corrections of the City of New York,  786 F.2d 516, 519  (2d Cir. 1986) ( "a policy or custom may be inferred from acts or omissions of a [defendant's] supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of plaintiff").  The appropriate inquiry "focuses on the actual or constructive knowledge of the municipality as well as upon the implied knowledge and reliance of municipal employees of that practice.") (Id.)

In this case, plaintiff has alleged that JetBlue had an unlawful policy, practice and custom of, inter alia,"arresting passengers in  retaliation for filing complaints against JET BLUE", and "improperly arresting JET BLUE passengers without probable cause to do so." (Am. Compl., ¶ 128). Under the law of this Circuit, such allegations are clearly sufficient to state a Monell claim

-37-

against JetBlue. See Rojas v. Alexander's Department Store, 924 F.2d 406, 409 ( 2d Cir. 1991) (if

"Alexander's had a policy of arresting shoplifting suspects on less than probable cause", this

would be sufficient to establish a Monell claim under Section 1983).

## X.   JET BLUE MAY BE HELD LIABLE UNDER SECTION 1983 FOR FAILING TO TRAIN ITS EMPLOYEES.

It is well-settled that a § 1983 claim may be brought against a municipality where a

"policy or custom" of the municipality caused the plaintiff's deprivation of his constitutional

rights. Monell v. Dep't of Social Servs., 436 U.S.658, 690-91 (1978). When a claim is based on a

municipality's failure to train or supervise, the existence of such a "policy or custom" is

established where "the failure to train amounts to deliberate indifference to the rights of those

with whom municipal employees will come into contact." City of Canton v. Harris, 489 U.S. 378,

388 (1989).   While liability may be established by showing repeated instances of similar

violations, "[e]vidence of a *single violation of federal rights*, accompanied by a showing that a

municipality has failed to train its employees to handle recurring situations presenting an obvious

potential for such a violation, could trigger municipal liability." Bd. of County Comm'rs v.

Brown, 520 U.S. 397 (1997) (emphasis supplied). See also  Vann v. City of New York, 72 F.3d.

1040, 1049 (2d Cir. 1995) ( "[D]eliberate indifference may be inferred if the complaints are

followed by no meaningful attempt on the part of the municipality to investigate or forestall

further incidents.")

In this case, plaintiff has alleged, inter alia, that defendant JetBlue exhibited a deliberate

indifference to the training and supervision of its employees. (Am. Compl.  ¶¶ 137-145). Under

the law of this Circuit, these allegations are sufficient to state a failure to train claim under

Monell.  See Walker v. City of New York, 974 F.2d 293, 301  (2d Cir. 1992) (reversing dismissal

-38-

of plaintiff's <u>Monell</u> claim where plaintiff "properly alleged that a particular municipal action –
the failure to train and supervise prosecutors to insure that they meet their constitutional
obligation to turn over exculpatory material to the defense – caused his injuries"); <u>Gentile v.
County of Suffolk</u>, 926 F.2d 142 (2d Cir. 1991) (sustaining <u>Monell</u> claim based on County's
failure to properly discipline  prosecutors and police officers for misconduct). Accordingly,
plaintiff has stated a viable <u>Monell</u> claim against JetBlue, and should be allowed an opportunity to
conduct discovery in furtherance of this claim. <u>See</u> <u>Walker</u>, 974 F.2d at 300 ("Walker should be
allowed to pursue discovery in order to determine whether there was a practice of condoning
perjury ... or a pattern of police misconduct sufficient to require the police department to train and
supervise police officers to assure they tell the truth."). Accordingly, defendant's motion to
dismiss this claim must be denied.

**CONCLUSION**

For the reasons set forth above, plaintiff respectfully requests that the Court deny JetBlue's
motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure in its entirety.

Dated: New York, New York
      December 17, 2009

                        JON L. NORINSBERG
                        Attorney for Plaintiff
                        225 Broadway, Suite 2700
                        New York, NY 10007
                        (212) 791-5396

By: _____
          JON L. NORINSBERG (JN-2133)

-39-
