UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ROSALINDA BAEZ,

                              **MEMORANDUM & ORDER**

                Plaintiff,

                              09-CV-596 (NGG) (SMG)

      -against-

JETBLUE AIRWAYS and TIFFANY
MALABET,

                Defendants.
-------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

       Plaintiff Rosalinda Baez ("Baez") brings this action under 42 U.S.C. § 1983 and state law against JetBlue Airways ("JetBlue"), and Tiffany Malabet ("Malabet") (collectively, "Defendants"). (Am. Compl. ("Complaint") (Docket Entry # 35) ¶¶ 1, 2.) Plaintiff claims that Defendants violated her constitutional rights by subjecting her to false arrest and depriving her of a fair trial. (Id. ¶¶ 73, 77.) Plaintiff further claims that Defendants defamed her and intentionally inflicted emotional distress upon her. (Id. ¶¶ 83, 85.) Malabet moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Malabet Mot. to Dismiss (Docket Entry # 46).) JetBlue moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). (JetBlue Mot. to Dismiss (Docket Entry # 36).) JetBlue also moves for sanctions against Baez pursuant to Federal Rule of Civil Procedure 11. (JetBlue Mot. for Sanctions (Docket Entry # 38).) For the following reasons, JetBlue's motion to dismiss is granted in part and denied in part, and its motion for sanctions is denied. Malabet's motion to dismiss is granted in part and denied in part.

## I. BACKGROUND[1]

### A. The Parties

Plaintiff Rosalinda Baez is a citizen and resident of Texas. (Complaint ¶ 1.) Defendant JetBlue is a Delaware corporation licensed to do business in the state of New York. (Id. ¶ 2.) JetBlue's principal place of business is in Queens, New York. (Id.) Defendant Tiffany Malabet is a citizen and resident of New York. (Id. ¶ 3.) JetBlue employed Malabet as a gate agent at John F. Kennedy International Airport ("JFK") in Queens, New York.

### B. Factual Background

On April 15, 2008, Baez arrived at JFK at 6:23 a.m. (Complaint ¶ 11.) She checked in at the JetBlue counter and received a boarding pass for her 8:05 a.m. flight to Austin, Texas. (Id. ¶ 12.) At the check-in counter, a JetBlue representative informed Baez that her plane would depart from Gate 18, but failed to tell her that Gate 18 was located in a separate terminal. (Id. ¶¶ 13-14.) Baez proceeded through security and waited for her flight in the wrong terminal. (Id. ¶ 15.) An hour later, when Baez did not hear her flight announced, she spoke with a JetBlue representative who told her that the flight was departing from a different terminal. (Id. ¶ 16.)

When Baez arrived at the correct gate, the waiting area was empty. (Id. ¶ 17.) Baez approached JetBlue agent Tiffany Malabet, who was exiting the jet bridge. (Id.) Baez asked to board the plane, which was still at the gate. (Id. ¶ 18.) Malabet told Baez, "I just closed the flight and you ain't getting on it." (Id. ¶19.) Baez told Malabet she had been waiting in the wrong terminal for over an hour, but Malabet refused to let her board the plane. (Id. ¶ 22.)

Baez then asked Malabet what would happen to her luggage if she were to board a different flight. (Id. ¶ 23.) Malabet told Baez that her bag would be in Austin when she arrived. (Id. ¶ 24.) Baez responded, "[t]hat doesn't make any sense. Isn't it a security risk to let a bag go

---

[1] The following facts are drawn from Plaintiff's Complaint and accepted for the purposes of this motion.

on a plane without a passenger, what if there was a bomb in the bag?" (Id. ¶ 25.) Malabet said that if there were a bomb in the bag, Transportation Security Administration ("TSA") officials would know, to which plaintiff replied, "TSA – my ass." (Id. ¶ 26.) Baez and Malabet then parted ways. (Id. ¶ 27.) Baez's flight remained at the gate for an additional thirty minutes before departing. (Id. ¶¶ 28-29.) During that time, Malabet did not report Baez's comment to the TSA or JetBlue. (Id. ¶ 30.)

Baez returned to the JetBlue customer service counter to re-book her flight. (Id. ¶ 31.) While an agent was re-booking Baez's flight, Malabet approached the agent and said, "this one thinks she's getting on a flight . . . [s]he['s] nasty, I['m] gonna mark her record." (Id. ¶¶ 32, 33.) Baez commented that she was a frequent flier with JetBlue and asked why Malabet was treating her so rudely, but Malabet did not respond. (Id. ¶ 34.) The booking agent gave Baez a boarding pass for the 1:05 p.m. flight to Austin. (Id. ¶ 35.)

While she waited for her flight, Baez filed an online complaint with JetBlue that identified Malabet by her first name and detailed their exchanges at the gate and at the customer service counter. (Id. ¶¶ 36, 37.) In response to Baez's complaint, JetBlue officials spoke with Malabet about the incident while Baez was still in the airport waiting for her flight. (Id. ¶¶ 38, 39.) Malabet told the JetBlue officials that, during their conversation at the jet bridge, Baez had said, "[w]ell I have a bomb in my bag, so are you guys going to turn the plane around, 'cause I need my bag." (Id. ¶ 41.) Malabet also told the officials that Baez had said that, "TSA does not know how to do their f-ing job, because if it did, TSA would not catch [the bomb] and let it go through." (Id. ¶ 42.)

In response to Malabet's accusations, a JetBlue security agent approached Baez and directed her to accompany him to the security office. (Id. ¶ 46.) Then, for approximately five

3

hours, law enforcement officials interrogated Baez about her patriotism, whether she had suicidal thoughts, and whether she used prescription drugs.[2] (Id. ¶¶ 46-48.) They repeatedly asked Baez to admit that she had made a bomb threat, but she refused. (Id. ¶ 49.) After finishing the interrogation, the officials arrested Baez and "charged" her with making a false bomb threat. (Id. ¶ 50.)

The story of Baez's arrest garnered international media attention, receiving coverage in the United States, South Africa, Denmark, Germany, and Sweden. (Complaint ¶ 54.) Baez alleges the publicity damaged her personal and professional reputation, and permanently impaired her employment prospects. (Id. ¶¶ 53, 54). Prior to this incident, Baez had never been arrested. (Id. ¶ 55.)

### C. Procedural Background

Baez filed her initial complaint in this action against JetBlue and Tiffany "Doe" on February 12, 2009. (Docket Entry # 1.) In it, she asserted four federal claims under 42 U.S.C § 1983: false arrest, malicious prosecution, malicious abuse of process, and denial of the right to a fair trial. (Id. ¶¶ 52, 55, 65, 70.) She also asserted state law claims of false arrest, malicious prosecution, malicious abuse of process, intentional infliction of emotional distress, prima facie tort, negligent hiring, negligent training, negligent supervision, negligent retention, unjust enrichment, and defamation. (Id. ¶ 52, 55, 65, 70, 74, 79, 84, 88, 94.) On April 15, 2009, JetBlue moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (See Docket Entry # 9.)

---

[2] It is unclear from the Complaint whether these were state or federal law enforcement officials. Baez refers to them only as "state and/or federal law enforcement officials." (Complaint ¶¶ 70-71.) Because Baez brings claims under 18 U.S.C. §1983, which requires state action, the court will assume they were state rather than federal officers for the purposes of deciding this motion.

4

On June 10, 2009, Baez moved for default judgment against Tiffany "Doe" for "failure to plead or otherwise defend" herself under Federal Rule of Civil Procedure 55 and Local Rule 55.2. (Docket Entry # 17.) On June 15, 2009, JetBlue moved to dismiss all claims against Tiffany "Doe" for failure to effect service on her pursuant to Federal Rule of Civil Procedure 4(m). (Docket Entry # 19.) On February 17, 2009, Baez left a summons for Tiffany "Doe" with a JetBlue employee described in the summons as a "co-worker." (See Docket Entry # 4.) Baez subsequently mailed a summons and complaint addressed to "Doe" to JetBlue headquarters. (Id.) Malabet has not worked at JetBlue since December 31, 2008. (Carbone Aff. (Docket Entry # 22) ¶ 2.) Furthermore, Baez never asked JetBlue to further identify Tiffany "Doe." (Burns Aff. (Docket Entry # 21) ¶ 2.)

On August 3, 2009, Judge Charles P. Sifton granted JetBlue's motion to dismiss Baez's claims against JetBlue and denied as moot JetBlue's motion to dismiss the claims against Tiffany "Doe." (Memorandum and Order dated August 3, 2009 ("Sifton Order") (Docket Entry # 26) 1.) Judge Sifton also granted Baez leave to amend her claims for false arrest, negligence, denial of the right to a fair trial, intentional infliction of emotional distress, and defamation, and granted Baez 30 days to plead diversity jurisdiction as to "Doe," which she had failed to do in her initial complaint. (Id. at 29.)

On October 22, 2009, Baez filed an amended complaint against JetBlue and Tiffany Malabet. (Complaint ¶ 2, 3.)[3] That complaint adequately pleads complete diversity. (Id ¶ 3.) Baez properly served Malabet for the first time on October 5, 2009. (Malabet Summons (Docket Entry # 33).). The case was reassigned to this court on November 24, 2009.

---

[3] For the first time, Baez named Tiffany Malabet, rather than Tiffany "Doe."

5

## II.  STANDARD OF REVIEW

When evaluating a motion to dismiss under Rule 12(b)(6), a court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co., 517 F.3d 104, 115 (2d Cir. 2008) (citation omitted). To survive a Rule 12(b)(6) motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A mere "formulaic recitation of the elements of a cause of action" is insufficient. Twombly, 550 U.S. at 555. Rather, the complaint must contain sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level." Id. A court may consider "any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit" on a motion to dismiss. ATSI Commc'ns. Inc. v. Shaar Fund. Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).

## III.  DISCUSSION

### A.  Section 1983 Claims

Section 1983 creates no substantive rights; rather, it provides a "mechanism for enforcing a right or benefit established elsewhere." Morris-Hayes v. Bd. Of Educ., 423 F.3d 153, 159 (2d Cir. 2005) (citation omitted). "To state a claim under §1983, a [p]laintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law." Nest v. Atkins, 487 U.S. 42, 48 (1988).

For the purposes of a §1983 action, private parties act under color of state law if (1) the state compelled the private party's conduct, (2) the private party acted jointly with a state, or (3) the private party fulfilled a role that is traditionally a public function performed by a state. See Sybalski v. Indep. Group Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008). A private party also acts under color of state law if it conspires with state actors to deprive someone of his or her constitutional rights. Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970). There must be "such a close nexus between the State and the challenged [private] action that seemingly private behavior may be fairly treated as that of the State itself." Tancredi v. Metro Life Ins. Co., 316 F.3d 308, 312 (2d Cir. 2003) (citations and internal quotation marks omitted).

Baez's allegations are insufficient to state a claim that either JetBlue or Malabet acted under color of state law. Baez contends that Defendants acted under color of state law because they provided false information to law enforcement officials who then interrogated and arrested her. But "providing false information to the police does not make a private individual . . . a state actor and liable under §1983." Chodkowski v. City of New York, No. 06-cv-7120 (LBS), 2007 U.S. Dist. LEXIS 67822, at *28 (S.D.N.Y. September 11, 2007). See also Fisk v. Letterman, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005) (dismissing a §1983 claim because the false testimony of a private actor is insufficient to show conspiracy with a state). A longstanding pattern of repeated lies and false accusations made for the purpose of procuring an arrest may constitute state action. Chodkowski, 2007 U.S. Dist. LEXIS 67822, at *27. Baez makes no such allegation here. She only cites the isolated incident on April 15, 2008. Because Baez insufficiently alleges that Defendants are state actors, Defendants' motions to dismiss are granted with respect to all federal claims.

B.  **State Law Claims**[4]

   1)  Relation Back of Amended Complaint

Malabet asserts that Baez's state law claims against her should be dismissed as untimely under N.Y. C.P.L.R. §215(3). ((Docket Entry # 46) at 15, 25.)[5] The events that gave rise to all of Baez's state claims occurred on April 15, 2008. (Complaint ¶ 11.) Baez did not name Malabet as a party until she filed her amended complaint on October 22, 2009, more than one year and six months later. (Id. ¶ 3.) Baez argues that her amended complaint naming Malabet was timely because it relates back to the initial complaint, which was filed within the statute of limitations period. ((Docket Entry # 48) 33.)

An amended complaint filed after the applicable limitations period has expired is nonetheless timely if it relates back to the original complaint. See Fed. R. Civ. P. 15(c). When an amendment to a pleading changes "the naming of the party against whom a claim is asserted, the amendment relates back to the date of the original pleading" if the claim arises "out of the conduct, transaction, or occurrence set out . . . in the original pleading," and "if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment (i) received such notice of the action that it will not be prejudiced in defending on

---

[4] This court has diversity jurisdiction over Baez's remaining state claims, since Baez pleads complete diversity as to JetBlue and Malabet. See Cushing v. Moore, 970 F.2d 1103, 1106 (2d Cir. 1992).

[5] The one year statute of limitations on intentional torts outlined in CPLR § 215 also applies to Intentional Infliction of Emotional Distress ("IIED") claims. See Young v. Suffolk County, No. 09-CV-3325 (JFB), 2010 U.S. Dist. LEXIS 35368, at *72 (E.D.N.Y. Apr. 9, 2010). Malabet has not, however, argued that the IIED claim against her is time barred. As such, the court addresses Baez's IIED claim against Malabet in conjunction with her IIED claim against JetBlue.

8

the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. (c)(1)(B)-(C).[6]

Under federal law, the "linchpin" of the relation back doctrine is notice to the defendant. Schiavone v. Fortune, 477 U.S. 21, 29 (1986). "If the notice requirement is met . . . a complaint may be amended at any time to correct a formal defect such as a misnomer or misidentification," including the omission of a defendant's first or last name. Godlewska v. Human Dev. Ass'n, CV-03-3985 (DGT), 2006 U.S. Dist. LEXIS 30519, at *15 (E.D.N.Y. May 18, 2006). A defendant need not have received formal notice in the form of a summons and complaint; "[i]t is sufficient that such notice occur through informal means." Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d 134, 138 (E.D.N.Y. 1998). The relevant inquiry is what the improperly named defendant "knew or should have known during the [relevant] period, not what the plaintiff knew or should have known at the time of filing her original complaint." Krupski v. Costa Crociere S.P.A.; 130 S.Ct. 2485, 2493 (2010) (emphasis in original).

Baez's claims against Malabet indisputably arose from the same incident as Baez's claims against JetBlue, namely, that she was falsely arrested due to Malabet's accusations. Baez provided Malabet's first name, Tiffany, in her initial complaint. She also gave sufficient details regarding her arrest that, had Malabet seen the complaint, she should have known that, but for a mistake, Baez would have brought the claims against her. See, e.g., Godlewska, 2006 U.S. Dist. LEXIS 30519, at *15. The only remaining question is thus whether Malabet had timely notice of the complaint. Determining whether Malabet had adequate notice "poses two factual questions,

---

[6] Federal Rule of Civil Procedure 15(c)(1)(A) states that a complaint will also relate back if "the law that provides the applicable statute of limitations allows relation back." "In deciding whether to apply state or federal relation back law, the Court must determine which law affords a more forgiving principle of relating back," and apply that principle. Williams v. United States, 07 Civ. 3018 (RJS) 2010 U.S. Dist. LEXIS 25102, at *29, 30 (S.D.N.Y. Feb. 25, 2010). The court has reviewed the applicable New York relation back standard, and finds the federal standard to be more forgiving as applied in this case. Therefore, the court addresses only the federal relation back standard.

9

that is, whether the defendant received some form of notice on a timely basis and whether such notice as [s]he received was adequate to prevent resultant prejudice from the delay in naming [her] as a defendant." Sigmund v. Martinez, 06 Civ. 1043 (RWS), 2006 U.S. Dist. LEXIS 49265, at *13 (S.D.N.Y. July 10, 2006).

Under federal law, notice would have been timely until the 120 day period for service ended on June 12, 2009. See Fed. R. Civ. Proc. 4(m). The record is insufficient for the court to determine whether or not Malabet had timely informal notice of Baez's claims and whether Malabet was prejudiced. The court orders limited discovery on these two issues. Malabet's motion to dismiss is denied without prejudice pending that discovery. After such discovery is completed, the parties may submit new motions.

   2)  Preemption

Defendants argue that Baez's state law claims are expressly and impliedly preempted by the Airline Deregulation Act ("ADA"), 49 U.S.C. § 1305. (JetBlue Mem. 25.) The ADA expressly preempts any state law relating to "a price, route, or service of an airline carrier." 49 U.S.C. §1305. The Second Circuit has not as yet ruled on exactly what types of claims § 1305 preempts. However, "actions in which plaintiffs invoke traditional elements of tort law . . . overwhelmingly incline against federal preemption." Pittman v. Grayson, 869 F.Supp. 1065, 1072 (S.D.N.Y. 1994). "The threshold inquiry" when determining whether claims are preempted under § 1305 is to "define whether the activity at issue in the claim is an airline service." Rombom v. U.S. Airlines, 867 F.Supp. 214, 221 (S.D.N.Y. 1994). "If the court determines that an activity is not an airline service for § 1305 purposes, the preemption inquiry ceases, and the state law claims are actionable." Id.

Baez's state law claims do not involve the type of activity that courts have considered to be a "service" under § 1305. See id. at 223 (barring claims of mistreatment during flight because air travel is a service, but allowing false arrest claim because it occurred after plaintiff had disembarked); see also Von Hundertmark v. Boston Professional Hockey Ass'n, Inc., CV-93-1369, 1996 U.S. Dist. LEXIS 20231, at *6 (E.D.N.Y. March 7, 1996) (allowing claims of negligent training and supervision of flight attendants because claims only marginally related to airline service). Baez's claims are not preempted by the ADA.

### 3) Intentional Infliction of Emotional Distress

Under New York law, an IIED claim requires a showing of "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Conboy v. AT&T Corp., 241 F.3d 242, 258 (2d Cir. 2001). Whether the alleged conduct is sufficiently outrageous to satisfy the first element is a matter of law for a court to decide. Howell v. N. Y. Post Co., 81 N.Y.2d 115, 121 (1993). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is rigorous, and difficult to satisfy." Conboy, 241 F.3d at 258 (internal quotation marks omitted). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Id. (internal quotation marks omitted). "Courts are reluctant to allow recovery under the banner of intentional infliction of emotional distress absent a deliberate and malicious campaign of harassment or intimidation." Cohn-Frankel v. United Synagogue of Conservative Judaism, 667 N.Y.S.2d 360, 363 (1st Dep't 1998).

Baez's allegations are insufficient to state a claim that JetBlue engaged in extreme and outrageous conduct when it relayed Malabet's accusations to law enforcement officials. Baez does not present any facts indicating that any JetBlue employee other than Malabet knew Malabet's statements were false. With respect to JetBlue, she merely alleges that, after receiving a report of a bomb threat from one of its employees, one of JetBlue's security agents took Baez to a security office for questioning. (Complaint ¶ 46.) This conduct falls far from the standard of extreme and outrageous behavior.

Baez's allegation that Malabet falsely accused her of making a bomb threat is sufficient to state a claim for IIED. Generally, "allegations of providing false information to the police . . . do not suffice" for an IIED claim absent additional outrageous behavior. Rivers v. Towers, Perrin, Forster & Crosby, Inc., No. CV-07-5441(DGT), 2009 U.S. Dist. LEXIS 26301, at *9 (E.D.N.Y. March 27, 2009). However, as an airline employee in post-9/11 America, Malabet knew or should have known that her false accusations would, at the very least, likely subject Baez to extensive police interrogation and potentially serious criminal charges.

### 4) False Arrest

Under New York law, to state a claim for false arrest, a plaintiff must show that "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995). A "civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution." Levy v. Grandone, 789 N.Y.S.2d 291, 293 (2d Dep't 2005). For a private defendant to be liable

12

for false arrest, "[t]he defendant must have affirmatively induced the [arresting] officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal to the point where the officer is not acting of his own volition." Curley v. AMR Corp., 153 F.3d 5, 13-14 (2d Cir. 1998). Furthermore, to show that a private party "intended to confine [the plaintiff] . . . [i]t is not enough that the defendant's words or actions caused a police officer to confine him; plaintiff must show that the defendant directed an officer to take him into custody." Du Chateau v. Metro-North Commuter R.R. Co., 668 N.Y.S.2d 12, 16 (1st Dep't 1999) (internal brackets and quotation marks omitted).

Baez alleges that JetBlue actively took part in her arrest when a JetBlue security agent approached her and "ordered [her] to accompany [the] agent to a security office" where law enforcement officials "detained and interrogated [her] for approximately five hours." (Complaint ¶¶ 46, 47.) Baez's allegations concerning JetBlue's security agent's actions alone are insufficient to plead a false arrest claim. Furthermore, Baez has not alleged facts suggesting that JetBlue personnel directed law enforcement officials to arrest her or that JetBlue personnel acted with officious and undue zeal in procuring her arrest. Her false arrest claim against JetBlue is therefore dismissed.

Baez claims that Malabet acted with "officious and undue zeal" in procuring her arrest when she falsely accused Baez of making a bomb threat. This allegation is sufficient to survive Malabet's motion to dismiss. Although falsely accusing someone of a crime does not generally rise to the level of false arrest, Malabet, an airline gate agent working after 9/11, knew or should have known that falsely stating that Baez said, "I have a bomb in my bag" in JFK airport would likely lead to Baez's detention and interrogation. Depending on the context in which Malabet

13

made this accusation, it could rise to the level of acting with "officious and undue zeal" in procuring Baez's false arrest.

    6)   Defamation

The Second Circuit has held that a defamation claim under New York law requires a plaintiff to show (1) that defendants made a false defamatory statement of fact; (2) that the statement was published to a third party; (3) that the statement concerned the plaintiff; (4) that the defendant was responsible for making the statement; and (5) that the statement was slander per se or caused special damages. Albert v. Loksen, 239 F.3d 256, 265 (2d Cir. 2001).

Judge Sifton previously determined that Baez adequately pleaded her defamation claim against Defendants. (Sifton Order at 28.) JetBlue challenges this conclusion on the ground that Baez's amended complaint failed to plausibly plead that JetBlue made its defamatory statements "with malice." (JetBlue Mem. at 31.) However, under New York law, a "plaintiff is not required to include . . . allegations of malice in its complaint." Util. Metal Research, Inc. v. Generac Power Sys., 179 Fed. Appx. 795 (2d Cir. 2006). JetBlue's motion to dismiss the defamation claim is thus denied.

Malabet argues that Baez's defamation claim should fail because Baez failed to allege whether the defamatory statements were written or oral or to whom Malabet made them. Baez did not name an individual to whom Malabet made defamatory statements or say whether she made the statements orally or in writing, but she did allege that Malabet "provided false and misleading information to various news and/or media outlets." (Complaint ¶ 85.) Baez's allegations meet the standard for a defamation claim, which only requires a plaintiff to show that a defendant "published [defamatory statements] to a third party." Albert, 239 F.3d at 265. Malabet's motion to dismiss Baez's defamation claim is consequently denied.

14

6) <u>Negligence Claims against JetBlue</u>

Under New York law, an employer can "be held liable under theories of negligent hiring, negligent retention, and negligent supervision." <u>Kenneth R. v. Roman Catholic Diocese of Brooklyn</u>, 654 N.Y.S.2d 791, 793 (2d Dep't 1997). "[A] necessary element of such causes of action is that the employer knew or should have known of the employee's propensity for the conduct which caused the injury." <u>Id.</u> To assert a claim for negligent training, a plaintiff "must demonstrate deficiencies in the training of employees that, if corrected, could have avoided the alleged harm." <u>Carter v. Port Auth. of N.Y. & N.J.</u>, 03 Civ. 8751 (DLC), 2004 U.S. Dist. LEXIS 25633, at *16 (S.D.N.Y. December 20, 2004).

Judge Sifton previously indicated that "amendment to [Baez's] negligence claim would not be futile" if she "plausibly allege[d] facts indicating that defendant Jet[B]lue knew or should have known of Doe's propensity for retaliating against customers for making complaints, or that there were deficiencies in employee training that caused the harm." (Sifton Order at 23.)

Baez amended her Complaint accordingly. She claims that JetBlue was negligent in hiring Malabet because it "failed to make reasonable inquiries into" Malabet's background, and that, had JetBlue "used reasonable care in inquiring into [her background], it would have learned that [Malabet] was patently unqualified for [her] position." (Complaint ¶¶ 96- 97.) Baez alleges JetBlue was negligent in retaining Malabet as an employee because "JetBlue knew, or in the exercise of reasonable care, should have known, that [Malabet] had a propensity for retaliating against customers who made complaints against her." (Complaint ¶ 102.) Baez further claims that JetBlue "failed to adequately train its employees . . . to properly respond to passenger complaints," and, even when it "learned of previous instances in which [Malabet] had made false allegations against passengers who had filed complaints against her . . . , [JetBlue] failed to

15

discipline" Malabet. (Complaint ¶¶ 109, 113-14.) Drawing all inferences in Baez's favor and accepting all of her allegations as true, Baez has adequately pled her claims for negligent hiring, retention, training, and supervision.

### C. JetBlue's Motion for Sanctions Under Federal Rule 11

The purpose of Federal Rule of Civil Procedure 11 is to "deter baseless filings in district court." Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990). Rule 11 sanctions are appropriate only where there is clear evidence that a plaintiff's claims are brought in bad faith. See Browning v. Debenture Holders' Comm. V. DASA Corp., 560 F.2d 1078, 1088 (2d Cir. 1977).

JetBlue argues that Plaintiff's pleadings are so legally and factually inadequate that the filing of the amended complaint warrants sanctions. (Mot. for Sanctions at 1.) Baez maintains that her allegations have ample legal and factual support, and that the court should award her the costs of responding to JetBlue's motion. ((Docket Entry # 38) at 1.) Baez has adequately pleaded claims for defamation, negligent hiring, negligent supervision, negligent training, and negligent retention against JetBlue, and JetBlue has presented no evidence of bad faith on Baez's part. See Browning 560 F.2d at 1088. JetBlue's motion for sanctions is therefore denied. The court declines, however, to exercise its discretion to award costs to Baez, in part because there is no evidence that her attorney spent a significant amount of time responding to JetBlue's motion. See Fed. R. Civ. P. 11(C)(1)(A) (a court may award reasonable expenses and attorney fees to the party prevailing in presenting or opposing a motion for sanctions).

## III. CONCLUSION

For the reasons set forth above, Malabet's motion to dismiss the Amended Complaint is GRANTED as to the § 1983 claims and DENIED without prejudice as to the state law claims for defamation, false arrest, and intentional infliction of emotional distress. JetBlue's motion to dismiss the Amended Complaint is GRANTED as to the § 1983 claims and the claims for false arrest and intentional infliction of emotional distress and DENIED as to the claims for negligent supervision, negligent retention, negligent training, negligent hiring, and defamation. JetBlue's motion for sanctions is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
      October 15, 2010

    /s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge